[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 26, 2010
JOHN LEY
CLERK

No. 08-15152

D. C. Docket No. 03-02989-CV-UWC-V

LAQUARIUS GRAY,
a minor, by and through her
mother and next friend,
Toniko L. Alexander,

                                        Plaintiff-Appellee,

                    versus

ANTONIO BOSTIC,
individually and in his official
capacity as Deputy Sheriff for
Tuscaloosa County, AL,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Alabama

Before DUBINA, Chief Judge, TJOFLAT, EDMONDSON, BLACK, CARNES,
BARKETT, HULL, WILSON, PRYOR and MARTIN, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED.**

**/s/ Joel F. Dubina**
_____
CHIEF JUDGE

CARNES, Circuit Judge, joined by BLACK, Circuit Judge, concurring in the denial of rehearing en banc:

The opinion dissenting from the denial of rehearing en banc addresses an issue that is not before this Court. The dissent addresses whether attorney's fees ought to be awarded in this nominal damages case. Our decision, by contrast, addresses the entirely different issues of whether we ought to vacate the district court's award of attorney's fees because the court made errors of law in deciding whether to award fees, and whether we ought to remand the case so that the district court can exercise its discretion free from the effect of those errors of law instead of exercising it ourselves.

No one disputes that the decision whether to award attorney's fees in a case involving an award of only nominal damages is committed to the sound discretion of the district court, subject to the parameters laid out in Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566 (1992), and related decisions. We said exactly that in our opinion for this Court. Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1039 (11th Cir. 2010) (Gray IV). But as the Supreme Court instructed earlier this year, although attorney's fees matters are "committed to the sound discretion of a trial judge . . . the judge's discretion is not unlimited." Perdue v. Kenny A. ex rel. Winn, — U.S. —, 130 S.Ct. 1662, 1676 (2010). And, just a month later the Court reminded us that: "Statutes vesting judges with such broad discretion are well

3

known in the law, particularly in the attorney's fees context. Equally well known, however, is the fact that a judge's discretion is not unlimited." Hardt v. Reliance Standard Life Ins. Co., — U.S. — , 130 S.Ct. 2149, 2158 (2010) (citation and quotation marks omitted). We also said that in our opinion. Gray IV, 613 F.3d at 1039.

As equally well established as those principles are two more. The first one is that when a district court commits an error of law in deciding how to exercise its discretion, that court has, by definition, abused its discretion. United States v. Brown, 332 F.3d 1341, 1343 (11th Cir. 2003) ("'A district court by definition abuses its discretion when it makes an error of law.'" (quoting Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047 (1996)); accord Young v. New Process Steel, LP, 419 F.3d 1201, 1203 (11th Cir. 2005) ("[A] ruling based on an error of law is an abuse of discretion."); United States v. Hall, 349 F.3d 1320, 1323 (11th Cir. 2003) ("[I]f the refusal [to give a requested jury instruction] was based on an error of law, then it is by definition an abuse of discretion.").

The second additional principle is that if a district court has abused its discretion, the court of appeals should not decide how to exercise the district court's discretion; instead, it should remand the matter so that the district court can exercise its discretion free from the error of law. See Mobley v. Head, 306 F.3d

4

1096, 1097 (11th Cir. 2002) ("[I]f the dissent were right that the district court misread Felker, then under Collins we would be required to remand; we would not be free to affirm by substituting for the district court's discretion our conjecture that it would have reached the same result had it been guided by a proper view of the law."); Collins v. Seaboard Coastline R.R. Co., 681 F.2d 1333, 1335 (11th Cir. 1982) ("A discretionary decision that falls within permitted bounds, but is based on false premises, raises the question on review as to whether the trial court would have come to the same conclusion using proper premises. That it could have does not satisfy the inquiry as to whether it would have reached the same result. The affirmance of a discretionary decision that is based on an improper view of the facts or the law merely reflects the appellate court's exercise of discretion that rightfully belongs to the trial court."); Advanced Estimating Sys., Inc. v. Riney, 77 F.3d 1322, 1325 (11th Cir. 1996) (explaining that because the abuse of discretion standard allows a range of choice for the district court, the case was being remanded to the district court to give it the first opportunity to decide the issue under the correct legal standard).[1]

---

[1]The application of the principle that an error of law committed by the district court in awarding fees does not entitle the court of appeals to exercise the district court's discretion should be especially obvious in a case like this one, where the fee award has to be vacated and the case returned to the district court anyway because it committed errors of law in calculating the amount of fees to be awarded. As we explained in our opinion, assuming that a fee award is to be made in this case, the district court committed errors in calculating the amount of a reasonable fee. See Gray IV, 613 F.3d at 1043–46.

5

These principles leave as a point of disagreement between our opinion for the Court and the dissenting opinion only the issue of whether the district court in deciding whether to award attorney's fees in this nominal damages case committed an error of law. It clearly did. For the convenience of the reader, we set out our explanation of how the district court's citation-count approach amounted to legal error:

> The district court, in deciding that an award of fees and expenses was warranted notwithstanding the nominal amount of damages, relied on the fact that the one published opinion to have come out of this litigation, our decision in Gray II [Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1300 (11th Cir. 2006)]; see also id. at 1301, had been "cited in more than fifty other cases" during the two years between its issuance on August 7, 2006 and the district court's order awarding fees on July 29, 2008. *In measuring "the significance of the legal issue on which the plaintiff prevailed" or "the public purpose served,"* Farrar, 506 U.S. at 121–22, 113 S.Ct. at 578–79 (O'Connor, J., concurring), *by totaling up the number of times that our Gray II decision had been cited, the district court misapplied the law and overstated the impact of that decision.*

> During the two-year period considered by the district court, our decision in Gray II had been cited, by our count, in sixty-four decisions, which is certainly "more than fifty other cases." *But only two of those sixty-four decisions cited Gray II for the point of*

---

The dissenting opinion does not dispute that the district court did err in that respect, so everyone agrees that the case has to go back for further proceedings in any event. In light of that, the dissenting opinion's statement that remanding the case to the district court is "a colossal waste of judicial resources," Dissenting Op. at 9, is puzzling. Ensuring that discretionary decisions are made, and are made free from legal error, by the court that the law charges with the responsibility for making them is anything but a waste of judicial resources.

6

*substantive law that this plaintiff prevailed on.* See Moretta v. Abbott, 280 Fed. Appx. 823, 825 (11th Cir. 2008) (unpublished) (citing Gray II in support of proposition that the unlawfulness of tasering a six-year-old who was passively standing in the corner of elementary school principal's office "was readily apparent to an official in the shoes of these officers"); T.S. v. State, 863 N.E.2d 362, 372 (Ind. Ct. App. 2007) (citing Gray II and two other decisions for the proposition that "a security or school officer who compels or restrains a student's movement seizes the student for Fourth Amendment purposes"). The substantive point of law underlying the plaintiff's victory in Gray II is the fairly narrow one that a law enforcement officer, acting as a school resource officer, who "handcuff[s] a compliant nine-year-old child for purely punitive purposes" has unreasonably seized the child in violation of the Fourth Amendment. See Gray II, 458 F.3d at 1307. *Narrow or not, the nature of that point of law is not the problem with the district court's citation-head-counting method for determining its significance. The problem is that the court's count was grossly overinclusive and greatly exaggerated the effect of that Gray II holding.*

*Sixty-two of the sixty-four citations to Gray II do not evidence "the significance of the legal issue on which the plaintiff prevailed" or "the public purpose served,"* but instead cite the decision for some point of law unrelated to its Fourth Amendment holding. For example, some of those other decisions cite Gray II for general principles of law that were already well established, such as those dealing with our interlocutory jurisdiction over appeals from motions for summary judgment based on qualified immunity. See, e.g., Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008). The plaintiff in this case cannot claim credit for that principle of law and probably would not want to do so even if she could. Some of the other of those sixty-two decisions actually cite Gray II for holdings on issues and claims that the plaintiff lost. For example, some of them cite the part of the decision applying the principle that a defendant cannot be held liable under § 1983 based on a theory of respondeat superior or on the basis of vicarious liability, Gray II, 458 F.3d at 1308 ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability.").

7

See Turner v. Marshall, No. 2:05-CV-983, 2008 WL 2559391, at *4–5 (M.D. Ala. June 24, 2008).

> *It was an error of law for the district court to conclude that simply because Gray II had been cited more than fifty times during a two-year period, the substantive issue on which the plaintiff prevailed must be significant and the public purpose served by her victory must be substantial.* That error of law requires us to vacate the court's order awarding the plaintiff fees and expenses and to remand for additional proceedings free from the error. *If the district court on remand chooses to do a headcount of citations to our Gray II decision,* it should survey all of the citations up to the time of its decision on remand, but it should count only those that cite the Gray II decision for its Fourth Amendment holding. Citations of the decision for humdrum, non-controversial, or long-established points of law do not matter and must not be included in the tabulation.

> We do not mean to imply that citation-counting should be the sole or even the primary means of determining the impact that a decision has had, or that it is even necessary to use that means. Indeed, in any case where the fee decision follows soon after a judgment of liability, which is what will usually happen, counting citations will not be possible. *Our holding is limited to what counts and what does not when citation-counting is used as a method for assessing the significance of a decision in the plaintiff's favor.*

Gray IV, 613 F.3d at 1041–42 (emphasis added) (footnote omitted).

We take this opportunity to sharpen up that explanation. As we stated in our opinion, only two of the sixty-two citations to the Gray II decision that the district court considered as establishing the importance of the Fourth Amendment holding in the plaintiff's case actually cited the decision for its Fourth Amendment holding in the plaintiff's favor. Only two, yet in assessing "the significance of the legal

8

issue on which the plaintiff prevailed" and "the public purpose served," Farrar, 506

U.S. at 121–22, 113 S.Ct. at 578–79 (O'Connor, J., concurring), the district court

counted all sixty-two citations as though they were in Fourth Amendment cases

ruling in favor of the plaintiffs based on Gray II. That is bad enough, but even

worse is the fact that at least thirty-four of the citing decisions the district court

counted in the plaintiff's favor actually cited the decision in her case on the points

she lost and against the plaintiffs in those other cases.[2] In other

---

[2]The plaintiff actually lost on most of her claims or requests for relief. She lost on her official claim against the sheriff, on her individual claim against the sheriff, and on her request for injunctive relief. See Gray II, 458 F.3d at 1307–10.

The decisions included in the group of sixty-two citing Gray II that the district court counted in plaintiff's favor but that actually cited Gray II for holdings against the plaintiff include the following: Simon v. Georgia, No. 07-14208, 282 Fed. Appx. 739, 740 (11th Cir. June 16, 2008) (unpublished); Sumner v. Glover, No. 1:05-CV-1201-WKW, 2008 WL 2873672, at *6 (M.D. Ala. July 23, 2008) (unpublished); Turner v. Marshall, No. 2:05-CV-983-ID, 2008 WL 2559391, at *4–5 (M.D. Ala. Jun 24, 2008) (unpublished); McClain v. Riley, No. 2:05-cv-943-WKW, 2008 WL 2439096, at *8 (M.D. Ala. June 13, 2008) (unpublished); Foy v. Riley, No. 2:05-cv-0946-MEF, 2008 WL 2278183, at *8 (M.D. Ala. May 30, 2008) (unpublished); Stanley v. United States, No. 5:06cv81/MCR/EMT, 2008 WL 2323893, at *9 (N.D. Fla. May 30, 2008) (unpublished); McGough v. Marion County, No. 5:06-cv-364-Oc-10GRJ, 2008 WL 2073907, at *11 (M.D. Fla. May 14, 2008) (unpublished); Shaw v. Marshall, No. 2:07cv606-ID, 2008 WL 1924992, at *6 (M.D. Ala. Apr. 9, 2008) (unpublished); O'Bryant v. Langford, No. 5:05cv131-RS/EMT, 2008 WL 906741, at *6 (N.D. Fla. Apr. 3, 2008) (unpublished); Brothers v. Prison Health Servs., Inc., No. 2:06cv168-MHT, 2008 WL 724949, at *5 (M.D. Ala. Mar. 17, 2008) (unpublished); Jackson v. Ellis, No. 3:07cv67/LAC/EMT, 2008 WL 89861, at *6 (N.D. Fla. Jan 7, 2008) (unpublished); Cooper v. Sexton, No. 5:07cv108/RS/EMT, 2007 WL 3132667, at *4 (N.D. Fla. Oct. 25, 2007) (unpublished); Middleton v. Andem, No. 5:07cv207/RS-EMT, 2007 WL 3011057, at *2 (N.D. Fla. Oct. 15, 2007) (unpublished); Marshall v. Harry, No. 2:06-cv-17-FtM-29DNF, 2007 WL 2892023, at *3 (M.D. Fla. Sept. 28, 2007) (unpublished); Larry v. McKeithen, No. 5:07cv114/RS/EMT, 2007 WL 2883830, at *2 (N.D. Fla. Sept. 28, 2007) (unpublished); Watts v. Smith, No. 5:07cv128/MCR/EMT, 2007 WL 2728392, at *3 (N.D. Fla. Sept. 18, 2007) (unpublished); Apel v. Escambia County Jail, No. 3:07cv314/MCR/EMT, 2007 WL 2728372, at *3 (N.D. Fla. Sept. 17, 2007) (unpublished); Watts v. Smith, No. 5:07cv128/MCR/EMT, 2007

9

words, at least seventeen times as many of the citations to <u>Gray II</u> were for

holdings against the plaintiff as were for the holdings in her favor, yet the district

court counted them all as though they were citations to the Fourth Amendment

holding in her favor. When a plaintiff's efforts result in a decision that is cited for

holdings that were against her and are contrary to the position of plaintiffs in civil

rights cases, those citations do not establish the significance of the legal issue on

which the plaintiff prevailed. They should not be counted in favor of the plaintiff

when it comes to deciding whether she is entitled to attorney's fees. Yet that is

---

WL 2462012, at *2 (N.D. Fla. Aug. 28, 2007) (unpublished); <u>Layne v. McDonough</u>, No.
3:07cv108/LAC/EMT, 2007 WL 2254959, at *2 (N.D. Fla. Aug. 6, 2007) (unpublished); <u>Watts
v. Smith</u>, No. 5:07cv128/MCR/EMT, 2007 WL 2257601, at *2 (N.D. Fla. Aug. 6, 2007)
(unpublished); <u>Owens v. DeLoach</u>, No. 2:05-cv-0287-MEF, 2007 WL 2069850, at *4 (M.D. Ala.
July 17, 2007) (unpublished); <u>Odom v. Santa Rosa County Jail</u>, No. 3:07cv267/RV/EMT, 2007
WL 2050319, at *2 (N.D. Fla. July 12, 2007) (unpublished); <u>Bonner v. Giles</u>, No.
2:05-cv-0409-MEF, 2007 WL 1992082, at *1 (M.D. Ala. July 5, 2007) (unpublished);
<u>Thompson v. Fed. Bureau of Prisons</u>, No. 3:07cv163/LAC/EMT, 2007 WL 1526845, at *2 (N.D.
Fla. May 24, 2007) (unpublished); <u>Bendross v. Hall</u>, No. 5:07cv75/RS/EMT, 2007 WL 1521584,
at *4 (N.D. Fla. May 23, 2007) (unpublished); <u>O'Bryant v. Langford</u>, No. 5:05cv131/RS/EMT,
2007 WL 1490752, at *5 (N.D. Fla. May 21, 2007) (unpublished); <u>Hervy v. McDonough</u>, No.
5:07cv58/RS/EMT, 2007 WL 1482392, at *2 (N.D. Fla. May 18, 2007) (unpublished); <u>Lewis v.
Escambia Cnty. Jail</u>, No. 3:07cv178/RV/EMT, 2007 WL 1428727, at *6 (N.D. Fla. May 14,
2007) (unpublished); <u>Baird v. McDonough</u>, No. 5:06cv250/MCR/EMT, 2007 WL 842161, at *2
(N.D. Fla. Mar. 16, 2007) (unpublished); <u>Anderson v. Rummel</u>, No. 3:07cv45/RV/EMT, 2007
WL 788431, at *3 (N.D. Fla. Mar. 14, 2007) (unpublished); <u>Robinson v. Dep't of Corrs.</u>, No.
3:07cv5/MCR/EMT, 2007 WL 624552, at *2 (N.D. Fla. Feb. 23, 2007) (unpublished); <u>Hall v.
Santa Rosa Corr. Inst.</u>, No. 3:06cv351/RV/EMT, 2007 WL 474370, at *5 (N.D. Fla. Feb. 9,
2007) (unpublished); <u>Magee v. City of Daphne</u>, No. 05-0633-WS-M, 2006 WL 3791971, at *6,
*7 n.14, *9 n.17, *11–12 (S.D. Ala. Dec. 20, 2006) (unpublished); <u>Riddick v. Reiger</u>, No.
2:03-cv-462-FtM-29SPC, 2006 WL 2644924, at *5 (M.D. Fla. Sept. 14, 2006) (unpublished).

exactly what the district court did, and that is exactly what the dissenting opinion defends. And that is an error of law.[3]

Our opinion for the Court also points out two other troubling aspects of the district court's reasoning in deciding whether to award attorney's fees in this case. See Gray IV, 613 F.3d at 1042–43. Our opinion did not decide, and we need not address now, whether those other two problems with the district court's reasoning also amounted to errors of law that would require us to vacate the award of fees if the citation-counting error had not occurred. Just as one bad ingredient can spoil a stew, one error of law can spoil an order. And in this case it did. The dissent would have us cook up a new order ourselves, but we will leave the do-over to the district court.

---

[3]The dissenting opinion asserts that the defendant's brief to us did not contend that the district court erred in relying on citation counting, see Dissenting Op. at 3 n.2, but that brief did contend that "Gray's case brought forth no issue of legal significance so as to leave any real precedent in civil rights law, nor did her 5 years of litigation accomplish any public purpose of note." Brief of Appellant at 12. That contention encompasses the error the district court made in counting citations, including citations for points that were decided against the plaintiff. The error originated when the district court committed it, not thereafter.

The dissenting opinion also characterizes the district court's error as only a "supposed 'error of law.'" Dissenting Op. at 3 n.2. That opinion, however, does not explain how it could be anything other than an actual, no-kidding, sure-enough error of law to include as establishing "the significance of the legal issue on which the plaintiff prevailed," Farrar, 506 U.S. at 121–22, 113 S.Ct. at 578–79 (O'Connor, J., concurring), citations to the Gray II decision on points that the plaintiff lost. That kind of reasoning—to borrow a verb and an adjective from the dissenting opinion—"mangles" logic and is a "colossal" error. Contrary to the dissenting opinion's assertion, Dissenting Op. at 10, we do not view this error as "narrow" one.

11

WILSON, Circuit Judge, dissenting:

This case concerns an award of attorney's fees to a plaintiff who prevailed under 42 U.S.C. § 1988. A panel of this Court set aside the fee, concluding that the district court abused its discretion by committing an error of law. The full Court voted to deny rehearing the case en banc. For three reasons, I dissent from the denial of rehearing en banc. First, the district court committed no error of law sufficient to warrant this Court's finding that it abused its discretion in awarding attorney's fees to the plaintiff. The award fell well within the boundaries of the district court's discretion, and the plaintiff's lawyers fairly earned their attorney's fees when the plaintiff prevailed on a significant legal issue of first impression. Second, the panel's opinion stretches Supreme Court precedent too far. In doing so, the Court too drastically constrains the district court's broad discretionary authority to grant attorney's fees to a nominal-damages plaintiff whose success in this litigation serves an important public purpose. And finally, our Court should take great caution when reaching a decision that is likely to deter attorneys from taking civil rights cases that may affirm or further define constitutional rights.

The facts, briefly stated, are as follows.[1]  Laquarius Gray was a 9-year-old, fourth-grade girl who failed to complete an assigned set of jumping jacks with the rest of her class.  After being told to continue and failing to comply, she made a disrespectful, threatening remark to Coach Lattuce Greer Williams.  Coach Tara Horton witnessed the exchange and instructed Gray to come speak to her.  Neither of the teachers involved in the situation were afraid or worried that Gray would act on her threat.  Antonio Bostic, a county Sheriff's deputy serving as a school resource officer, witnessed the exchange between Gray and these teachers.  Despite one of the teachers insisting that she would handle the situation, Deputy Bostic removed Gray from the gym and proceeded to handcuff her.  Coach Horton indicated after the incident that she would not have been required to take any disciplinary action as the incident "wasn't that major." *Gray II*, 458 F.3d at 1302.  Further, she explained that she would have talked to Gray and given her a warning for the incident.

Gray's mother subsequently filed suit on her behalf, alleging a violation of Gray's Fourth Amendment right to be free from unreasonable seizures.  Gray ultimately prevailed on her claim under 42 U.S.C. § 1983, although the jury

---

[1]The panel in *Gray ex. Rel. Alexander v. Bostic*, 458 F.3d 1295, 1300–03 (11th Cir. 2006) ("*Gray II*"), discussed the facts in greater detail.  The facts provided here serve as a brief summary and further elaboration is not essential to the resolution of the legal issue regarding the award of attorney's fees.

awarded her only $1 in nominal damages. Gray filed a motion for attorney's fees

and expenses, seeking $78,390.00; Bostic filed <u>no</u> response. The district court

performed a lodestar analysis and awarded Gray $70,532.93 in attorney's fees.

This Court then held that the district court abused its discretion when

deciding to award attorney's fees, and remanded the case back to the district court

to determine "whether the plaintiff is entitled to an award of attorney's fees and

expenses . . . even though she recovered only nominal damages,"[2] and whether

plaintiff is entitled to an enhancement for delay, "and, if so, how much." *Gray ex*

*rel. Alexander v. Bostic*, 613 F.3d 1035, 1046 (11th Cir. 2010) ("*Gray IV*"). To

justify its decision to vacate and remand, the Court explains that the abuse of

discretion arises from an "error of law" that the district court committed by

"greatly exaggerat[ing]" the precedential effect of the principle of law derived

from this litigation, and "grossly overinclud[ing]" the number of cases that have

relied on the success of the litigation. See *Gray IV*, 613 F.3d at 1041–42.

Specifically, the Court found that the district court erred by overstating the

significance of our published opinion in *Gray ex. rel. Alexander v. Bostic*, 458 F.3d

---

[2]The above concurrence states that this dissent "addresses an issue that is not before this Court[:] . . . whether attorney's fees ought to be awarded in this nominal damages case." Concurring Op. at 1. Yet, that is precisely the issue briefed and submitted for consideration on appeal. In fact, Bostic's brief is bereft of any contention that there was an "error of law" resulting from citation counting, and the case was decided on the briefs, without oral argument. The supposed "error of law" apparently originated thereafter.

14

1295 (11th Cir. 2006) ("*Gray II*"), when it stated that *Gray II* was cited in more than 50 cases, as many of those do not cite our decision for its holding. *See Gray IV*, 613 F.3d at 1042.

The panel's opinion mistakenly concludes that, as a result of that supposed deficiency, the district court did not properly apply the principles announced in *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992). *See Gray IV*, 613 F.3d at 1042–1043. In reaching its conclusion, the opinion disagrees with the *way* in which the district court articulated its reasoning, but fails to recognize that the district court ultimately applied *Farrar*'s holding: the degree of a plaintiff's success is critical to the reasonableness of an award.

After deciding that the district court committed an error of law in its citation counting, the panel's opinion points to other aspects of the district court's decision that it found "troubling." *Gray IV*, 613 F.3d at 1042–43. First, the panel's opinion asserts that the district court "blaz[ed] new trails" by stating that civil rights cases are undesirable because they have to be taken on a contingency basis. *Gray IV*, 613 F.3d at 1042–43. Additionally, the opinion cynically states that the district court's decision to award fees may have been an "end-run around the jury's nominal damages award." *Id*. at 1043. I believe the panel's opinion misconstrues

15

the statements of the district court, and, in effect, overlooks the significant reasons upon which the district court relied when awarding attorney's fees.

I believe the full Court should have reheard this case en banc to decide: (1) whether Gray's award of attorney's fees accords with the principles announced in *Farrar*, in light of the fact that she prevailed on a significant legal issue that accomplished an important public purpose; (2) whether the panel's opinion applies *Farrar* too broadly, as that opinion is limited in both the narrow legal principal it espouses and its distinct factual context; and (3) whether, under the principles of *Farrar*, the district court abused its discretion by failing to adequately explain its reasons for finding Gray's suit to be successful beyond her recovery of nominal damages.

**I.      The District Court Did Not Abuse its Discretion in Awarding Attorney's Fees**

TheCourt stated in *Gray IV* that the district court's supposed error of law "requires us to vacate the [district] court's order awarding the plaintiff fees . . . ." *Gray IV*, 613 F.3d at 1042 (emphasis added).  In doing so, the Court substituted its own discretion for that of the district court, neglecting to credit the fact that the

16

district court properly applied *Farrar* when it analyzed the overall success of Gray's lawsuit.

"Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge . . . ." *Perdue v. Kenny A. ex. rel. Winn*, 130 S. Ct. 1662, 1676 (2010). Indeed, the Supreme Court has stressed that the highly deferential abuse-of-discretion standard remains paramount to our review of whether a district court awarded a "reasonable" fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983). "This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* After all, only the district court judge "will have read all of the motions filed in the case, witnessed the proceedings, and been able to evaluate" the overall success of the lawsuit "in light of the objectives, context, legal difficulty, and practical obstacles present in the case." *Perdue*, 130 S. Ct. at 1679 (Breyer, J., dissenting). Therefore, when applying the abuse-of-discretion standard, we must recognize that "[w]hen a district court has discretion, there are usually a range of choices it may make and still be affirmed; there is not only one right choice for the court to make." *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1298 (11th Cir. 2002). Although an award of attorney's fees is left to the district court's

discretion, the court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

The district court properly exercised its discretion when it justified its fee award by noting: (1) the legal acumen of plaintiff's attorneys when they ultimately prevailed, despite the district court's initial dismissal of the action; (2) Gray's success even though she faced a vigorous defense "on every hand and at every stage in this litigation;" (3) the concrete public benefit provided by *Gray II*, as demonstrated by its use in future lawsuits; (4) its determination that the jury's award of nominal damages was unsupported by the weight of the evidence, reflecting the district court's estimation that Gray's success exceeded her monetary recovery; (5) a recognition that in areas of police misconduct—where injunctive relief often is unavailable—success cannot be measured simply based on monetary recovery; and (6) the undesirability of civil rights cases. *Gray v. Bostic*, N.D. Ala. 2008 (No. 7:03-cv-2989-UWC, July 29, 2008).[3] Thus, the district court concluded

---

[3]The district court acknowledged the *Johnson* factors as part of a lodestar analysis. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3, 103 S. Ct. at 1937 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

18

that although Gray received only $1 in nominal damages, her suit was successful in important ways.

The Court's primary basis for vacating the district court's attorney's fee award was its belief that the district court committed an "error of law" by relying on the fact that the decision in *Gray II* has "already been cited in more than 50 other cases." *Id.* Paragraph 10 of the district court's Findings of Fact and Conclusions of Law (attached as an Appendix) states:

> Over a five-year period, this case has been the subject of four appeals and three decisions by the Eleventh Circuit Court of Appeals. The most important of these decisions, handed down just two years ago, has already been cited in more than fifty other cases. The case was vigorously defended on every hand and at every stage of the litigation. The legal acumen of Plaintiff's counsel is reflected in the fact that the Plaintiff ultimately prevailed, despite this Court's initial dismissal of this action."

*Id.* The Court asserts that the district judge's "count was grossly over-inclusive and greatly exaggerated the effect of the *Gray II* holding" since there were, at that

time, only two decisions citing *Gray II* for the point of substantive law upon which Gray prevailed.

Despite this Court's conclusion to the contrary, there was no error of law so significant as to warrant a finding of abuse of discretion. First, the district judge did not state that *Gray II* was cited in more than 50 other cases *for the principle of law that the plaintiff prevailed on*; nor would such an erroneous assumption have been essential to its conclusion. The district court's order has a single sentence mentioning citations: "[t]he most important of [Gray's appeals], handed down just two years ago, has already been cited in more than fifty other cases." *Gray v. Bostic*, N.D. Ala. 2008 (No. 7:03-cv-2989-UWC, July 29, 2008) (citations and footnotes omitted). Based on that sentence, the above concurrence concludes that "the district court counted all sixty-two citations as though they were in Fourth Amendment cases ruling in favor of the plaintiffs based on Gray II." Concurring Op. at 7. I fail to see how the district court's statement leads to this conclusion. Although the panel opinion is correct in suggesting that the cases citing *Gray II* for the proposition of law therein carry more weight than those that do not, such heavy reliance on this finding of the district court is a significantly overstated reason for erasing the reasonable fee.

Second, and more importantly, the panel's opinion neglects to give due weight to the district court's consideration of the cases citing *Gray II* that *do* fully illustrate *Gray II*'s significance. Remanding the case to the district court so that it can determine how much weight to give these citations, in my view, is a colossal waste of judicial resources. In *Moretta v. Abbott*, 280 F. App'x 823, 825 (11th Cir. 2008) (per curiam), it is obvious that we relied on *Gray II* when further delineating the Fourth Amendment rights of school children. There, police officers shocked Isiah Allen, a 6-year-old, 53-pound child, with 50,000 volts of electricity, causing him to convulse violently. *Id*. at 824. The officers then handcuffed Allen while he vomited. *Id*. Much like Gray, "Allen posed no threat to anyone's safety, including himself." *Id*. at 825 (quotation omitted). Thus, we concluded, "[t]he conduct at issue here lies so obviously at the very core of what the Fourth Amendment prohibits, that the unlawfulness of the conduct was readily apparent to an official in the shoes of these officers." *Id*. at 825 (citing, *inter alia*, *Gray II*, 458 F.3d at 1306–07).

Additionally, in *T.S. v. State*, 863 N.E.2d 362, 372 (Ind. App. 2007), the court cited *Gray II* for the proposition that a school officer who restrains a student's movement "seizes" the student under the meaning of the Fourth Amendment. *See also Jordan v. Blackwell*, M.D. Ga. 2008 (No. 5:06-cv-214 (HL),

21

Sept. 29, 2008) (citing *Gray II* when discussing the use of force by school resource officers against children in the school setting).

These cases demonstrate the significant effect that Gray's suit already has had in affirming students' Fourth Amendment rights in schools. By attacking the *manner* in which the district court articulated its reasons for Gray's success, the panel's opinion ignores the district court's essential point—that Gray's case has already provided a concrete public benefit for school children who were subjected to Fourth Amendment violations. While the above concurrence insists that the opinion does nothing more than state that the district court committed a narrow error of law, the panel's opinion goes much further than that, mangling the district court's order [attached] beyond recognition.

Aside from the citation-counting issue, the panel opinion also criticized the district court's statements that (1) the jury's verdict awarding $1 was considerably unsupported by the evidence and (2) that the court would have granted a motion for new trial if one had been brought before it. *Gray IV*, 613 F.3d at 1043. The opinion noted that these may indicate "something of an end-run around the jury's nominal damages award." *Id.* On the contrary, the statements reflect the district court's evaluation of the extent of Gray's success and its conclusion that a fee award would not be a "windfall" to her attorneys. *Accord City of Riverside v.*

*Rivera*, 477 U.S. 561, 580, 106 S. Ct. 2686, 2697 (1986) (plurality opinion) (noting that § 1988 is not intended to provide windfalls to attorneys). After seeing the case from the complaint phase to the jury verdict, and after hearing all of the evidence concerning Gray's injuries and Bostic's conduct, the district court was in the best position to determine the extent of the plaintiff's success. Moreover, these statements, placed in a footnote, do not appear to weigh heavily in the district court's overall evaluation of Gray's success.

The district court gave reasoned consideration to the "overall success" of Gray's suit, success that was not readily reducible to a sum of money. *See Farrar*, 506 U.S. at 114, 113 S. Ct. at 574 (internal quotation marks omitted). As Part II below will demonstrate, the district court's reasoning comports with the principles announced in *Farrar*; Gray was an unlikely prevailing party on a significant legal issue that served an important public goal. Regardless of whether this Court would have come out differently if it were to step into the shoes of the district court and conduct its own review, we are constrained in this instance and should defer to the district court's discretion in determining that Gray's successful lawsuit warranted an award of attorney's fees.

II. **The Award of Attorney's Fees Was Proper Because Gray's Suit Affirmed a Significant Legal Principle and Advanced a Public**

23

**Purpose By Protecting the Fourth Amendment Rights of Students in Schools**

A thorough analysis of this case reveals that Gray should be entitled to attorney's fees because the "indicia of success" weigh in favor of the award. *See Farrar*, 506 U.S. at 120–22, 113 S. Ct. at 578–79 (O'Connor, J., concurring).

Fee-shifting in § 1983 cases is governed by 42 U.S.C. § 1988(b), which permits a district court, at its own discretion, to award *reasonable* attorney's fees to the prevailing party in a civil rights suit. *See Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1244 (11th Cir. 2003). The Supreme Court has held that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex. rel. Winn*, 130 S. Ct. 1662, 1672 (2010) (citation omitted). And in *Farrar*, the Supreme Court held that a plaintiff who receives nominal damages is a "prevailing party" eligible to receive attorney's fees. 506 U.S. at 112, 113 S. Ct. at 573. The Court, however, affirmed the denial of attorney's fees in *Farrar* because it was "readily apparent" that the plaintiff's victory was purely technical or *de minimis*. *Id*. at 120, 113 S. Ct. at 578 (O'Connor, J., concurring).

Although the Supreme Court noted that when a plaintiff recovers nominal damages, "the only reasonable fee is *usually* no fee at all," *id*. at 115, 113 S. Ct. at 575 (emphasis added), the opinion merely reiterated what had already been clear: the degree of a plaintiff's success is the "'most critical'" factor in determining the reasonableness of fees. *Id*. at 114, 113 S. Ct. at 574 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 1941 (1983)). The Court did not purport to establish a bright-line rule that an award of attorney's fees in a nominal-damages case necessarily constitutes an abuse of discretion. Rather, *Farrar* instructs district courts to consider the low monetary recovery inherent in a nominal-damages case as one factor in the extent of success of a civil rights lawsuit. *See Riverside*, 477 U.S. at 574, 106 S. Ct. at 2694 (citation and quotations omitted) ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider . . . ."). "Reasonableness,"—not simply whether the plaintiff recovered nominal damages, at the exclusion of other considerations—remains the touchstone of the inquiry.

Justice O'Connor's concurrence, which represents the law of our Circuit, stresses that "nominal relief does not necessarily a nominal victory make." *Farrar*, 506 U.S. at 121, 113 S. Ct. at 578 (O'Connor, J., concurring). Rather, "an award

25

of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Id.* (citation omitted); *see also Riverside*, 477 U.S. at 574, 106 S. Ct. at 2694 ("Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal . . . damages awards.").

Justice O'Connor lists three "indicia of success" that should be considered when assessing whether a nominal-damages plaintiff achieved a purely "technical" or "*de minimis*" victory: (1) "the significance of the legal issue on which the plaintiff claims to have prevailed," (2) whether the suit "accomplished some public goal," and (3) "[t]he difference between the amount recovered and the damages sought."[4] *Farrar*, 506 U.S. at 121–22, 113 S. Ct. at 578 (O'Connor, J., concurring). In setting forth these factors, she confirms the majority's assertion that the "'the degree of the plaintiff's *overall* success goes to the reasonableness of a fee award." *Id*. at 114, 113 S. Ct. at 574 (majority opinion) (emphasis added) (quoting *Texas Teachers Ass'n v. Garland School Dist.*, 489 U.S. 782, 793, 109 S. Ct. 1486, 1494 (1989)). Like us, most circuits have relied on Justice O'Connor's concurrence when examining whether awarding attorney's fees to

---

[4] The panel's opinion in this case relies on Justice O'Connor's concurrence. See *Gray IV*, 613 F.3d at 1040.

26

nominal-damages plaintiffs is appropriate, especially in cases that affirm important constitutional principles.[5]

The panel's opinion attempts to overstretch *Farrar*, the facts of which bear little resemblance to the facts of this case. In *Farrar*, no factor came close to

_____

[5]See, e.g., *Mercer v. Duke University*, 401 F.3d 199, 206, 212 (4th Cir. 2005) (upholding fees because the issue on which plaintiff prevailed was one of first impression and would "serve as guidance for other schools facing the issue"); *Murray v. City of Onawa*, 323 F.3d 616, 619 (8th Cir. 2003) (finding that "compelling city officials to make at least cursory investigations into serious allegations of police abuse and misconduct" is a significant legal victory); *Brandau v. Kansas*, 168 F.3d 1179, 1182 (10th Cir. 1999) (upholding fees because, as a result of the suit, the state was put on notice that it should investigate sexual harassment claims); *Muhammad v. Lockhart*, 104 F.3d 1069, 1070 (8th Cir. 1997) (upholding fees for inmate who established violation of Eighth or Fourteenth Amendments because litigation accomplished public goal of encouraging the government to perform its constitutional duties scrupulously); *Piper v. Oliver*, 69 F.3d 875, 877 (8th Cir. 1995) (upholding the award of fees because the right to be free from illegal detention was significant, defendants would be deterred from future violations, and difference between amount received and sought was not comparable to *Farrar*); *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994) (finding that fee award was justified by the significance of deterring landlords from tolerating brokers who discriminated on the basis of race); *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994) (finding that the right to be free from cruel and unusual punishment is a significant legal issue, that civil rights litigation advances an important public purpose, and that the discrepancy between damages sought and received was not as drastic as that in *Farrar*); *Koopman v. Water Dist. No. 1 of Johnson County, Kan.*, 41 F.3d 1417, 1421 (10th Cir. 1994) (concluding that plaintiff's victory was significant and advanced public purpose by putting district on notice that it must provide its employees with pretermination and post-termination hearings, litigation was not protracted, and claim for damages was not extravagant); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1222–24 (10th Cir. 2006) (finding abuse of discretion in district court's reasonable hours calculation because plaintiffs succeeded on their primary First Amendment claim and their victory advanced an important public purpose now that defendants, who had argued vigorously that their conduct was constitutional, were on notice that it was not); *Wagner v. City of Holyoke*, 404 F.3d 504, 509–10 (1st Cir. 2005) (per curiam) (upholding a fee award of $72,840 in a First Amendment case because district court provided legally sound reasons for award); *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 125 (1st Cir. 2004) (affirming an award of nominal damages on a due process claim because "the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose"); *O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir. 1997) (noting that plaintiff's victory was not *de minimis* because, among other things, it provided an incentive to attorneys to represent civil rights litigants such as the plaintiff and deterred future abuses).

weighing in favor of the plaintiff, *see Farrar*, 506 U.S. at 122, 113 S. Ct. at 679

(O'Connor, J., concurring);[6] here, Gray satisfied difficult burdens to win in this

Circuit's first case to deny a schoolhouse qualified immunity in the Fourth

Amendment context, thus prevailing on an important constitutional issue of first

impression.

Applying the factors set forth by Justice O'Connor to this case yields results

very different from the outcome of *Farrar*. First, the holding of *Gray II* helps to

delineate the boundaries of appropriate conduct for school and law enforcement

officials in schools. Second, Gray's suit serves an important public purpose

because it will deter future Fourth Amendment violations by school officials; in

fact, the case has already been used to hold school officials accountable for

unreasonable searches and seizures. Third, the difference between the amount of

damages sought compared to those received was not nearly as dramatic as in

*Farrar*.

---

[6]The plaintiff in *Farrar* dragged six defendants through ten years of litigation for a business injury. Though he sought $17 million in damages, he obtained only $1 against the least blameworthy defendant, and no award against the other defendants. Furthermore, no important public purpose was discernible because it was not even clear what unlawful conduct had occurred. "In this case, the relevant indicia of success—the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served—all point to a single conclusion . . . ." *Farrar*, 506 U.S. at 122, 113 S. Ct. at 679 (O'Connor, J., concurring).

*A. Gray Succeeded on a Significant Legal Issue of First Impression*

*that Provides Important Guidance for School Officials*

Although this Court has not engaged in extensive discussion to define

"significant legal issue" in this context, other circuits have interpreted this prong of

Justice O'Connor's inquiry in two ways. Some define the "significance of the

legal issue" prong by going beyond a focus on actual relief obtained to examine the

extent to which the plaintiff succeeded on her theory of liability. *See Barber v.*

*T.D. Williamson, Inc.*, 254 F.3d 1223, 1231 (10th Cir. 2001).[7] Other courts have

held that this prong addresses the "general legal importance of the issue on which

the plaintiff prevailed." *Mercer v. Duke University*, 401 F.3d 199, 206 (4th Cir.

2005).[8] Under either of the two prevailing definitions, Gray's victory weighs in

favor of awarding attorney's fees.

---

[7] *See also Brandau*, 168 F.3d at 1182 (even though plaintiff only succeeded on one of multiple claims, attorney's fees were justified because she succeeded on her primary claim of sexual harrassment); *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993) (plaintiffs prevailed on almost all of their claims). This approach seems consistent with Justice O'Connor's analysis of this prong in *Farrar*. See *Farrar*, 506 U.S. at 121, 113 S. Ct. at 578 (O'Connor, J., concurring).

[8] *See also Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994) ("[W]e understand the second *Farrar* factor to address the legal import of the constitutional claim on which plaintiff prevailed.").

Applying the first definition, Gray prevailed against the one defendant at trial[9] on her primary claim that her rights under the Fourth Amendment had been violated. *See Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (holding that the first prong of the O'Connor test was met because, although plaintiffs brought other claims, they succeeded on their primary First Amendment claim). Further, as the district court noted, Gray succeeded on her primary claim against Bostic despite his vigorous defense "on every hand and at every stage of the litigation." *Gray v. Bostic*, N.D. Ala. 2008 (No. 7:03-cv-2989-UWC, July 29, 2008); *cf. Boston's Children First v. City of Boston*, 395 F.3d 10, 18 (1st Cir. 2005) (finding no abuse of discretion where the district court denied attorney's fees on the grounds that there was no significant legal victory in a $1 "nominal award to two of ten original plaintiffs, the entitlement to which was *conceded by the defendants from the virtual outset*"). In contrast to Gray, who succeeded on her primary claim against the most culpable defendant, the plaintiffs in *Farrar* achieved a "hollow" victory because after 10 years of litigation, he recovered $1, not the $17 million he sought, from just one of six defendants, and the "least culpable defendant" at that. *Farrar*, 506 U.S. at 121, 113 S. Ct. at 578 (O'Connor, J., concurring).

---

[9]Sheriff Edmund Sexton was also a defendant, but Gray's claim against him was dismissed at the summary judgment stage. See *Gray II*, 458 F.3d at 1308–09.

Under the second approach, a plaintiff has prevailed on a "significant legal issue" where she has vindicated important constitutional rights[10] or presented a matter of first impression in the Circuit. For example, the Eighth Circuit held that the "vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue *in contrast to the injury to a business interest alleged in Farrar*." *Lockhart*, 29 F.3d at 424 (emphasis added).[11]

Gray succeeded on a significant legal issue because (1) she vindicated an important constitutional principle, the Fourth Amendment right of a child to be free from unreasonable seizures; (2) her case presented an issue of first impression and is the first in our Circuit to deny qualified immunity in the schoolhouse Fourth Amendment context, further defining the contours of "reasonableness" for school and law enforcement officials in schools; and (3) she prevailed where others had failed, by proving that her Fourth Amendment rights, in the school context, were violated and that this violation was clearly established.

---

[10] *See Piper v. Oliver*, 69 F.3d 875, 877 (8th Cir. 1995) (holding that the "right to be free from illegal detention [is] a significant one"); *Cabrera*, 24 F.3d at 393 (finding success on "a significant legal issue—namely, that landlords can be held liable for employing real estate brokers who are engaged in racial steering").

[11] The plaintiff in *Farrar* alleged a violation of his civil rights because defendants contributed to the temporary closing of his boarding school. *Farrar v. Cain*, 756 F.2d 1148, 1149 (5th Cir. 1985). After the jury verdict, it was not even clear what specific lawless conduct the suit condemned. *Farrar*, 506 U.S. at 122–23, 113 S. Ct. at 578 (O'Connor, J., concurring).

Gray's "case was important in that it marked a milestone in the development of the law" concerning the Fourth Amendment rights of children in schools. *Mercer*, 401 F.3d at 207. In *New Jersey v. T.L.O*, 469 U.S. 325, 105 S. Ct. 733 (1985), the Supreme Court held that searches by school officials are subject to a "Fourth Amendment standard of reasonableness that stops short of probable cause." *Id.* at 325, *id.* at 742. Thus, a school search is "permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342, 105 S. Ct. at 743 (footnote omitted).

Applying the *T.L.O.* test, *Gray II* further defines and clarifies what type of conduct (i.e., handcuffing a child who poses no safety threat) is excessively intrusive in light of the age and sex of a child (here, a 9-year-old girl). 458 F.3d at 1306. We have noted that "[s]pecific application of [the *T.L.O.*] factors . . . is notably absent from the [*T.L.O.*] Court's discussion and conclusion." *Jenkins v. Talladega City Bd. of Ed.*, 115 F.3d 821, 825 (11th Cir. 1997) (en banc). *Gray II* offers a specific application, denying immunity to a school resource officer who used force as a disciplinary measure against a nine-year-old girl who posed no safety threat.

32

Significantly, Gray's victory represents the first case in our Circuit to deny qualified immunity to a school official on a Fourth Amendment claim. Gray was able to overcome *T.L.O.*'s permissive standard of "reasonableness" (rather than "probable cause") and then prove that Deputy Bostic's violation was clearly established. We have held that "where the applicable legal standard is a highly general one, such as 'reasonableness,' preexisting case law that has applied general law to specific circumstances will almost always be necessary to draw a line that is capable of giving fair and clear notice that an official's conduct will violate federal law." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 954 (11th Cir. 2003) (citation omitted). It is a "rare occasion" that a Fourth Amendment constitutional violation is "obvious." *Gray II*, 458 F.3d at 1307 (citations omitted). But in *Gray II*, this Court held that Deputy Bostic's conduct was a clearly established violation because it was "obvious." 458 F.3d at 1307. Thus, the case offers guidance for evaluating "reasonableness" in the context of future Fourth Amendment claims, putting school officials on notice of what conduct violates a child's Fourth Amendment rights.

Gray's success is even more remarkable in light of other plaintiffs' lack of success in litigation in the context of unreasonable searches and seizures within schools. In the two prior cases dealing with qualified immunity in the school

context, we found that "strip searches" of students undertaken to find stolen money were not clearly established violations of the Fourth Amendment. *Thomas*, 323 F.3d at 952, 956 (granting qualified immunity to a teacher and police officer who strip-searched a fifth-grade group to find a missing $26, because, although the search constituted a violation, it was not "clearly established"); *Jenkins*, 115 F.3d at 822–23, 828 (granting, en banc, qualified immunity to school officials who strip-searched two 8-year-old elementary students to find $7 stolen from a classmate, on the grounds that there was no clearly established violation).[12]  In both cases we relied in part on the fact that there was no factually similar case law on point and that the violations were not so "obvious" as to alert the school officials that the relevant conduct was unconstitutional.

The preceding discussion reveals that a plaintiff seeking to vindicate her Fourth Amendment rights in the school setting must overcome two significant hurdles: (1) the plaintiff must first show that the actions taken by school officials were unreasonable and (2) to avoid dismissal on qualified immunity grounds, she must further demonstrate that the defendants violated clearly established law.  Gray did both.  The district court underscored her success with regard to these standards

---

[12] *See also Cuesta v. School Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 969 (11th Cir. 2002) (finding no Fourth Amendment violation in a strip search because there was reasonable suspicion of violence); *C.B. v. Driscoll*, 82 F.3d 383, 388 (11th Cir. 1996) (finding no violation because search was justified by reasonableness grounds).

when it stated that it initially had denied the plaintiff's claim on qualified immunity grounds.[13]  Gray succeeded not only on the legally significant issue of whether there was a constitutional violation, but also on whether the violation was clearly established.  Prior plaintiffs in our Circuit claiming Fourth Amendment violations in the school context were unable to do so.

While the panel's opinion minimizes Gray's legal victory as a "fairly narrow one," *Gray IV*, 613 F.3d at 1041, it neglects to acknowledge that the importance of the legal issue.  *Gray II* makes up part of a broader discussion, currently in a state of flux, about the boundaries of the relationship between students and school authority figures who are charged with securing their safety and providing them with a crime-free learning environment.  The Supreme Court recently considered the Fourth Amendment rights of schoolchildren in *Safford Unified School District No. 1 v. Redding*, 129 S. Ct. 2633 (2009).  There, school officials strip-searched Savana Redding to see whether she was concealing prescription drugs in her undergarments.  *Id*. at 2638.  The district court found "no Fourth Amendment

---

[13]The district court had held that, while it found Deputy Bostic's "conduct to be reprehensible, the Plaintiff ha[d] not identified a single federal case for the proposition that the handcuffing of a student by a law enforcement official for ostensibly pedagogical reasons violates the federal Constitution."  *Gray v. Bostic*, N.D. Ala. (No. 03-C-2989-W, Jan. 30, 2004), *rev'd*, 11th Cir. 2004, 127 Fed. App'x 472 (No. 04-12240, Dec. 27, 2004).

violation, and a panel of the Ninth Circuit affirmed. A closely divided Circuit sitting en banc, however, reversed." *Id*. (internal citation omitted).

After granting certiorari, the Supreme Court held that although the strip search violated the Fourth Amendment, the school official who ordered the search was entitled to qualified immunity because it was questionable whether the right was clearly established. *Id*. at 2643–44. The Supreme Court quoted our en banc decision in *Jenkins*, 115 F.3d at 828, where we stated that *T.L.O.* is a "'series of abstractions, on the one hand, and a declaration of seeming deference to the judgments of school officials, on the other,' which made it impossible 'to establish clearly the contours of a Fourth Amendment right . . . [in] the wide variety of possible school settings different from those involved in *T.L.O.*' itself." *Safford*, 129 S. Ct. at 2643.

The Supreme Court's recognition of the still-developing case law regarding the Fourth Amendment rights of schoolchildren, coupled with the acknowledgement of our Court that these rights are not clearly established, leads to the conclusion that Gray prevailed on a significant legal issue of notable public benefit and first impression. She affirmed a student's constitutional right to be free from obviously unreasonable seizures.

Rather than being yet another opinion granting qualified immunity, Gray's

case serves as a bookend, delimiting the narrow range of clearly established

unacceptable conduct for school officials.  It helps distinguish reasonable from

unreasonable seizures in the schoolhouse context, where the highly general

standard of "reasonableness" often fails to define the contours of students' Fourth

Amendment rights with clarity.[14]  As such, her case provides useful guidance for

school officers and courts—exactly what qualified immunity cases should do.[15]  As

an issue of first impression, and the first of its kind to deny qualified immunity in

our Circuit, Gray succeeded on an issue of legal significance.

> *B. Gray Advanced an Important Public Goal By Deterring Future*
>
> *Fourth Amendment Violations by School Officials and Affirming the*
>
> *Rights of Schoolchildren to be Free From Unreasonable Seizures*

---

[14]In a pre-*Farrar* § 1983 case dealing with prison abuse, we affirmed the district court's award of $62,643.20 in attorney's fees on a $3,500 judgment, finding that "[t]he line between permissible discipline and impermissible abuse is often difficult to discern in a prison setting, but legal precedents and common sense help us to draw that line when necessary.  Every time a court delineates discipline from abuse, the line becomes slightly easier to see." *Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991).

[15]"In our legal system, with its reliance on stare decisis and respect for precedent, a case involving the claim of a single individual, without any request for wide-ranging declaratory or injunctive relief, can have a profound influence on the development of the law and on society. Because [the plaintiff's] case was the first of its kind, [our opinion] and the jury's verdict will serve as guidance to other schools facing similar issues." *Mercer*, 401 F.3d at 208.

For the reasons set forth *supra* in section A, *Gray II* advances an important public purpose by deterring Fourth Amendment violations by school officials and vindicating important rights for children in the school setting. *See Farrar*, 506 U.S. at 121–22, 113 S. Ct. at 578–79 (O'Connor, J., concurring); *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) (citation omitted) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988."); *Davis*, 936 F.2d at 1215 (concluding that "the success or failure" of a civil rights lawsuit cannot "be judged solely by the size of the jury verdict," because "[t]he deterrent effect of [a civil rights] lawsuit could well be as important as the monetary damages recovered"). Courts have concluded that a plaintiff advances a public goal where her suit deters future abuses, affirms an important constitutional principle, puts the defendant on notice that it must improve its conduct in the future, or actually provokes a change in the defendant's conduct.[16]

---

[16]*See, e.g., Lippoldt*, 468 F.3d at 1224 (plaintiff's litigation revealed to defendants that their conduct was unconstitutional, though they had consistently argued otherwise); *Cabrera*, 24 F.3d at 393 (upholding ordinary lodestar fee amount for a $1 nominal damage award and incidental equitable relief for racially discriminatory denial of rental housing in part because the landlord's loss "serve[d] as a clear warning to landlords that the law will not tolerate their use of brokers who discriminate invidiously"); *Muhammad*, 104 F.3d at 1070 (stating that the verdict in favor of the plaintiff "accomplished a public goal, namely, encouraging governments scrupulously to perform their constitutional duties"); *Piper*, 69 F.3d at 877 (stating that "a public goal had been served by [the plaintiff's] victory in encouraging [the defendants] to refashion their forfeiture procedures to avoid future illegality"). *But see Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1052–53 (5th Cir. 1998) (holding that plaintiff's victory on procedural

As the district court noted when explaining its award of attorney's fees, in a case like Gray's that involves "individual police misconduct," a "deterrent effect is particularly evident [because] . . . injunctive relief generally is unavailable." *Riverside*, at 575, 106 S. Ct. at 2694; *see also Davis*, 936 F.2d at 1215. For instance, in *Duckworth v. Whisenant*, 97 F.3d 1393, 1395, 1400 (11th Cir. 1996) (per curiam), our Circuit found that the district court did not abuse its discretion in awarding attorney's fees of $162,209 against a sheriff's department on an excessive force claim, despite a $500 damage award. We held that we would "not endorse Defendants' efforts to undermine the significance of this litigation," because a finding that the sheriff's department tacitly condoned excessive force by their officers could "only inure to the benefit of those involved when redressing an officer's abuse of discretion which violates a person's constitutional rights." *Id*. at 1399. As a result, we deferred to the district court's discretion in declining to reduce the lodestar amount on the basis of *Farrar*. *Id*. at 1395.

Likewise, Gray's suit serves an important purpose, and unlike *Farrar*, one does not search "in vain for the public purpose" Gray's litigation has served. *Farrar*, 506 U.S. at 122, 113 S. Ct. at 578 (O'Connor, J., concurring). This case

---

due process claim produced no "public benefit" because the "procedural due process violation as found by the jury was peculiar to Hidden Oaks, not general in the sense that the City would be forced to change its dealings with other landowners as a result").

reminds school officials that while they have considerable freedom in maintaining school safety, they do not have unlimited discretion. As the district court noted, at every stage in this litigation, Deputy Bostic argued vigorously that his seizure of Gray was justified under either a reasonableness standard or a more heightened "arguable probable cause" standard. *See, e.g.*, *Gray v. Bostic*, 11th Cir. 2004 (No. 04-12240, Dec. 27, 2004) (complaint stage); *Gray II*, 458 F.3d at 1300 (summary judgment stage); *Gray v. Bostic*, 264 Fed. App'x 856, 856 (11th Cir. 2008) (judgment as a matter of law stage). Our Court's finding to the contrary serves to deter not only Deputy Bostic but all school officials in this Circuit from violating the Fourth Amendment rights of students. Consequently, Gray's suit serves an important public purpose for all school children; it did not merely give Gray the "moral satisfaction of knowing that a federal court concluded that [her] rights had been violated in some unspecified way." *Farrar*, 506 U.S. at 114, 113 S. Ct. at 574 (quotation omitted).

By contrast, in *Farrar*, the Court searched in vain for the public purpose that plaintiff's litigation may have served, "other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121–22, 113 S. Ct. at 578 (O'Connor, J., concurring). No one could discern the lawless conduct that could be deterred in the future as a result of the suit, as the jury verdict was "regrettably

40

obtuse," *id*. at 122, 113 S.Ct. 578–79, and reflected only that Farrar's rights were violated in "some unspecified way." *Id*. at 114, 113 S. Ct. at 574 (majority opinion) (quotation and citation omitted). Because his case "carrie[d] no discernable meaning," it had no prospect of benefitting anyone other than Farrar. *Id*. at 122, 113 S. Ct. at 579 (O'Connor, J., concurring) (citations omitted).

Gray's case clearly established that a school official cannot seize a child in the absence of any safety threat. By helping to define the boundaries of permissible and impermissible conduct for school officials, it serves a greater public purpose by deterring future abuses by such officials and has already aided in vindicating the rights of other children who have been subject to Fourth Amendment violations in their schools.

### C. The Amount of Damages Sought Compared to the Amount of Damages Received Was Not Outrageous

Further, the divergence between the amount of damages that Gray sought and what she received was not drastic. In *Farrar*, the plaintiff sought $17 million, and after 10 years of litigation, was awarded only $1 by the jury. The high damages Farrar sought indicated that money was the primary purpose of his action, and thus a low monetary recovery reflected a low degree of success. *See Wilcox*, 42 F.3d at 557 n.8.

41

Gray's case, however, was not simply about the money. At the close of a one-day jury trial, Gray's counsel argued that in a civil case like this one, all that a plaintiff could ask for was money (presumably because injunctive relief was not available), but that no dollar value could be placed on the injury that occurred to Gray as a result of Bostic's constitutional violation. Gray asked for a sum of $25,000, a far cry from Farrar's request for $17 million. Other courts have granted fee awards both where there were similar and more drastic splits. *Compare Murray*, 323 F.3d at 619 (upholding an award of attorney's fees, inter alia, because the disparity between the $500,000 in damages requested and the $1 received was not "an outrageous split"), *and Brandau*, 168 F.3d at 1182 (holding that the "difference between the judgment recovered and the recovery sought was significantly distinct from the corresponding difference in *Farrar*" where plaintiff sought backpay for twenty-one months and $50,000 in non-economic damages), *and Lockhart*, 29 F.3d at 424 (fees granted because, *inter alia*, the discrepancy between the amount of damages sought ($860,000) and amount recovered ($2) "pales in comparison to the discrepancy presented in *Farrar*"), *with Romberg v. Nichols*, 48 F.3d 453, 455 (9th Cir. 1995) (denying attorney's fees where plaintiff sought $16 million in damages from 8 defendants, but received only nominal damages), *and Pino v. Locascio*, 101 F.3d 235, 239 (2d Cir. 1996) (denying

42

attorney's fees where plaintiff asked for $21 million and got $1). Viewed in light of these cases, the difference between the damages Gray sought and the relief she was awarded does not rise to the level of "outrageous."

III.    **Attorney's Fee Awards Enable Plaintiffs to Bring Meritorious Civil Rights Claims**

Absent the dedication and efforts of Gray's attorneys, Gray's Fourth Amendment rights would not have been vindicated, nor could she have helped to uphold the Fourth Amendment rights of other schoolchildren in our Circuit. "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." *Riverside*, 477 U.S. at 575, 106 S. Ct. at 2694 (citation omitted) (internal quotation marks omitted). As the Supreme Court has explained, "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id*. at 574, 106 S. Ct. at 2694. Therefore, "Congress has determined that the public as a whole has an interest in the vindication of the rights conferred by [§ 1983], over and above the value of a civil rights remedy to a particular plaintiff." *Id*. (internal quotation marks omitted). Because it realized that contingency-fee arrangements did not

provide sufficient incentives to lawyers to accept civil rights cases that often produced small monetary recoveries but great public benefit, Congress enacted § 1988. *Id.* at 577, 106 S. Ct. at 2695.

The Seventh Circuit has noted that if a small damages award is the reason for denying attorney's fees, then misconduct that is neither harmful enough to support a large compensatory award nor egregious enough to justify a punitive damages award is "as a practical matter, beyond the reach of the law" because would be impossible to attract a competent lawyer without an expectation of a fee award. *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997). While cases such as Gray's may seem "narrow" in their reach, the Seventh Circuit stated that "the cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty . . . ." *Id.*; *see also Koopman*, 41 F.3d at 1421 ("Deterring meritorious lawsuits on constitutional issues because they offer a small likelihood of a significant money judgment presents as grave a danger to our legal system as frivolous litigation.").

**CONCLUSION**

*Farrar* reiterates the importance of a plaintiff's overall success in calculating an award of attorney's fees. The district court, with its intimate knowledge of

Gray's suit, gave reasoned consideration to this issue. While this Court may not agree with the way in which the district court articulated its reasoning, the discretion due to the district court, combined with the actual significance of Gray's victory, requires that we defer to the district court's award of attorney's fees. No error of law exists to support a conclusion that the district court abused its discretion when awarding attorney's fees in this litigation.

Quite simply, "[i]n our legal system, with its reliance on stare decisis and respect for precedent, a case involving the claim of a single individual . . . can have a profound influence on the development of the law and on society." *Mercer*, 401 F.3d at 208. The district court properly recognized that Gray's success did not lie in a monetary award, but in affirming an important constitutional principle. It is not our place to substitute our own judgment.

# APPENDIX

FILED
2008 Jul-29 PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

LAQUARIUS GRAY, a minor by    )
and through her mother and next    )
friend, TONIKA L. ALEXANDER, )
                                                      )
                    Plaintiff,             )
                                                      )          Civil Action Number
vs.                                              )          7:03-cv-2989-UWC
                                                      )
ANTONIO BOSTIC,                      )
                                                      )
                    Defendant.           )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

Eschewing Defendant Antonio Bostic's position that Plaintiff Laquarius Gray

is not entitled to an award of attorney's fees,[1] the Court makes and enters herein the

following Findings of Fact and Conclusion of Law.

### A. FINDINGS OF FACT

1. This action was commenced on November 4, 2003, by the minor Plaintiff

Laquarius Gray through his attorney, Gary P. Cody. Although the original thirty six-

page complaint named other defendants, the case has proceeded against Tuscaloosa

County Deputy Sheriff Antonio Bostic and, to a significantly lesser extent, Sheriff

---

[1] *See* Doc. 100.

Edmund Sexton.[2]  The gravamen of the complaint is that Deputy Bostic detained and handcuffed the nine-year old Plaintiff during her physical education class,  in violation of her constitutional rights.

2. At the conclusion of the evidence at trial, the Court granted judgment as a matter of law against Deputy Bostic. The jury returned nominal damages in the amount of $1.00, and Plaintiff's counsel did not seek a new trial on damages.[3]

3. In the Northern District of Alabama, an hourly range of $150.00 to $250.00 is the prevailing market rate for similar services performed by lawyers of reasonably comparable skills, experience, and reputation to those of attorneys Liveoak, Cody, Edge, Collins, and Boyles.  An hourly range of $100.00 to $150.00 is the prevailing market rate in North Alabama for similar services performed by lawyers of reasonably comparable skills, experience, and reputation to those of attorney Peacock,

4. A reasonable hourly rate for Plaintiff's attorneys Liveoak, Cody, Edge, Collins, and Boyles is $200.00.

5. Because of his relatively short time at the bar, a reasonable hourly rate for

---

[2] Tuscaloosa County School Superintendent Joyce Sellers and County School Board members Frankie Thomas, James Barnnet, James Junkin, Morris Acker, Don Presley, Dot Smith, and Pam Gardner were also named as defendants, but before they answered the complaint, the Plaintiff voluntarily dismissed them under Fed. R. Civ. P. ("Rule") 41(a)(1)(I). (Docs. 17, 18.)

[3] Had Plaintiff's counsel timely filed a motion for a new trial on damages, it would have been granted. In the Court's view, the jury's verdict was abundantly unsupported by the weight of the evidence.

Plaintiff's attorney Peacock is $125.00.

6. A total of 346.2 hours were reasonably expended by counsel in the prosecution of this case . The following counsel expended the hours indicated:

> T. Blake Liveoak...................................232.7[4]
> H. Arthur Edge.....................................73[5]
> W. Brian Collins...................................4.5[6]
> G. Richard Boyles, Jr............................10
> Curtis Peacock......................................6
> Gary Cody............................................20[7]

7. Gary Cody's law firm has reasonably incurred $562.93 in expenses directly related to the prosecution of this case.[8]

---

[4] On review of the Itemization of Time submitted by Plaintiff's counsel, (Doc. 114-3), the Court has determined that Deputy Bostic's assertion of redundancy in the hours claimed for June 7, 2005, is without merit. The Court has disallowed half (7) of the fourteen (14) hours claimed for services performed prior to the entry of his appearance in this case. The Court has included four hours for deposition preparation on June 17, 2005, since this item apparently was inadvertently omitted from the calculation of Liveoak's total hours.

[5] Edge's hours were overstated by two on the final calculation submitted for him.

[6] Collins' hours were overstated by five and a half.

[7] Based on this judge's experience both as a judge and former civil rights lawyer, the twenty hours approved for Cody are modest indeed, considering that he alone represented the Plaintiff from the filing of the complaint until this Court's dismissal of the case was reversed by the Eleventh Circuit. His conferences with the Plaintiff, draft of the complaint and opposition to the motions to dismiss, and his successful appeal of the Court's dismissal of the case certainly required more than twenty hours. Defendant's argument that he is entitled to only two hours simply lacks merit. (*See* Doc. 100; Bostic's Objection and Opposition to Application for Attorney's Fees at 4.)

[8] The Court disallows the $27.10 claimed for facsimile expenses because they were not shown to be related to this case.

8. The Collins, Liveoak & Boyles ("CL&B") law firm has reasonably incurred

$1,180.00 in expenses directly related to the prosecution of this case.[9]

9. The CL&B firm is not entitled to reimbursement for the services rendered

by their secretaries in this case.

10. Over a five-year period, this case has been the subject of four appeals[10]

and three decisions by the Eleventh Circuit Court of Appeals. The most important of

these decisions, handed down just two years ago,[11] has already been cited in more

than fifty other cases.[12] The case was vigorously defended on every hand and at

---

[9] Plaintiff's counsel have failed to establish that the following claimed expenses are directly related to the prosecution of this action:

| | |
|---|---|
| $27.54 | for postage expenses |
| $18.61 | for copies/printing |
| $100 | for file set-up fee |
| $15 | for certificate of good standing |
| $170 | for admission to court |
| $84.80 | for Absolute Home Care |
| $153 | for faxes |
| $10 | for miscellaneous |
| $343.50 | for copies/printing |

[10] One of Deputy Bostic's appeals apparently was dismissed by the Eleventh Circuit for want of prosecution. (*See* Doc. 114-2, dated February 24, 2006.)

[11] *Alexander v. Bostic*, 458 F.3d 1295 (11th Cir.2006).

[12] *See, e.g., Jennings v. Jones*, 499 F.3d 2, 17 (1st Cir.2007); *Andujar v. Rodriguez*, 486 F.3d 1248, 1251 (11th Cir.2007); *Bates v. Harvey*, 518 F.3d 1223, 1239 (11th Cir.2008); *Marshall v. West*, 507 F.Supp.2d 1285, 1292 (M.D.Ala.2007); *Magee v. City of Daphne*, 2006 WL 3791971, *6 (S.D.Ala.2006); *Muhammad v. Washington Mut. F.A..*,2007 WL 1020840, *4(N.D.Ga.2007); *Williams v. Edwards*, 2007 WL 527987, *2 (M.D.Ga. 2007); *Campbell v. Johnson*, 2008 WL 490592, *7 (S.D.Fla. 2008); *Marshall v. Harry*, 2007 WL 2892023, #3 (M.D. Fla.2007); *In re Jesse W.*, 152 P.3d 1217, 1221 (Ariz.App.Div. 1 2007); *T.S. v. State*, 863 N.E.2d

every stage of the litigation. The legal acumen of Plaintiff's counsel is reflected in the fact that the Plaintiff ultimately prevailed, despite this Court's initial dismissal of this action.

11. Among the bar of the Northern District of Alabama, this case was an undesirable one. Because of the limited financial resources of the Plaintiff, the case could only be taken on a contingency basis. For completely understandable reasons,[13] it is extremely difficult to find lawyers willing to represent plaintiffs in civil rights cases on a contingency basis.

12. The relationship between the Plaintiff and his counsel is limited to this case.

13. Although the Plaintiff received only $1.00 in nominal damages, as found earlier, the jury's damage award was considerably unsupported by the evidence. In its most recent expression in this case, the Eleventh Circuit affirmed this Court's grant of judgment as a matter of law to the Plaintiff: "we conclude that, viewing the evidence in the light most favorable to Deputy Bostic, he lacked even arguable

---

362, 372 (Ind.App. 2007).

[13] The preclusion of other business from prospective corporate clients, the greater attraction of personal injury and other tort cases, the necessity to advance litigation expenses from the profits from other cases, the remoteness of the possibility of prevailing, and the sometimes interminable hassling over attorneys' fees after having prevailed on the merits—these are among the reasons which make these kinds of cases generally unattractive to members of the Bar.

probable cause to arrest Gray." (Doc. 116 at 5.)

14. Most of the legal work performed in this case relates to the claim against Deputy Bostic. The court finds that at least eighty-five percent (85%) of the legal services would have been required even if Sheriff Sexton had never been a party to the action.[14]

15. Since the Plaintiff did not prevail on his claim against Sheriff Sexton, the hours to which his counsel would otherwise be entitled will be reduced by fifteen percent (15%).[15]

16. Plaintiff's counsel are entitled to a 15% enhancement for the delay in payment.

17. Plaintiff's counsel are entitled to the following amounts of reasonable attorneys' fees and reimbursement of expenses:

a. The CL&B Firm

| Attorney | Hours | | Hourly rate | | Total Fees |
|---|---|---|---|---|---|
| T. Blake Liveoak | 232.70 | x | $200 | = | $46,540 |
| H. Arthur Edge | 73 0 | x | $200 | = | $14,600 |
| W. Brian Collins | 4.5 | x | $200 | = | 900 |
| G. Richard Boyles, Jr. | 10 | x | $200 | = | $2,000 |

---

[14]Although Sheriff Sexton remained a pre-trial defendant until the Eleventh Circuit held that he was entitled to summary judgment on the ground of qualified immunity, the record does not reflect that he was subjected to any discovery. By the time of trial, he was out of the case.

[15] This deduction will be made from the time attributable to the primary counsel, T. Blake Liveoak.

| Curtis Peacock | 6 | x | $125 | = | $750 |

Total fees..................................................................$64,790

Moreover, the CB& L firm is entitled to reimbursement of reasonable expenses in the amount of $1,180.

### b. Gary Cody

Gary Cody is entitled to payment for 20 hours at a $200.00 hourly rate, for a total of $4,000.00. He is also entitled to reimbursement for expenses in the amount of $562.93.

## B. CONCLUSIONS OF LAW

1. A prevailing party in an action brought under 41 U.S.C. § 1983 is entitled to a reasonable attorney's fee. 42 U.S.C. § 1988; *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968). Plaintiff Gray is a prevailing party in this action.

2. In setting a reasonable attorney's fee, a district court is required to utilize the "lodestar approach," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Kenny A. v. Purdue et al.*, Nos. 06-15514, 06-15874, 2008 WL 2609238, at *10 (11th Cir. July 3, 2008); *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir.1994); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar is "the guiding light of our fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar incorporates all of the

twelve factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See also Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

3. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. An hourly rate of $200.00 is reasonable for Plaintiff's attorneys Liveoak, Edge, Collins, Boyles, and Cody; and an hourly rate of $125.00 is reasonable for attorney Peacock.

4. In calculating the number of hours reasonably expended in the prosecution of the action, a court must exclude "excessive, redundant, or otherwise unnecessary hours." *Hensley*, 461 U.S. at 434. The Court has disallowed 14.5 hours as redundant.

5. In determining reasonable hours, a court must deduct time spent on discrete and unsuccessful claims. *Norman*, 836 F.2d at 1302. The Court has reduced by fifteen percent (15%) the reasonable hours expended by Plaintiff as time attributable to the discrete claims against Sheriff Sexton.

6. "It is improper [to reduce hours] based on a simple ratio of successful issues to issues raised. *Id.* "Where all theories derive from a common nucleus of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Id.* The hours for which Plaintiff's counsel are being

compensated all derive from a common nucleus of operative facts.

7. Where the documentation of claimed attorney hours is inadequate, "the court may make the award based on its own experience." *Norman*, 836 F.2d at 1303. The Court has based its conservative award of 20 hours to Gary Cody on its own expertise and experience.

In the area of police misconduct, where injunctive relief is generally unavailable to safeguard individual constitutional rights, a court should not reduce the prevailing attorney's hours simply because the monetary relief is paltry. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987); *City of Riverside v. Rivera*, 474 U.S. 917 (1985); *Norman*, 836 F.2d at 1303.

8. A reasonable attorney's fee for the prevailing party should reflect the delay between the time the services were rendered and the payment for the services. While the Eleventh Circuit does not "prescribe any set method for correcting the delay in payment, . . . some form of correction must be undertaken." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1211 (11th Cir.1983). Generally courts in the Eleventh Circuit deal with the delay factor by compensating at current rates rather than at historic rates. *Norman*, 836 F.2d at 1302. However,

> using current rates to account for the delay in payment is somewhat inaccurate as it assumes that the increase in legal fees mirrors that of inflation, which in many instances is not the case. A more accurate method for adjusting for delays in payment would be to apply to the award a figure which is recognized as

representing the time value of money over the period of the litigation.

*Gaines v. Dougherty County Board of Education,* 775 F.2d 1565, 1572 n.14 (11th

Cir.1985). Since over the past five years, the prevailing market rates in the Northern

District of Alabama do not reflect inflation, the Court has enhanced the award by

fifteen (15%) percent.

## Conclusion

By separate order, the Court will grant the Plaintiff's motion for reasonable

attorneys' fees and reimbursement of expenses.

_____
U.W. Clemon
United States District Judge