[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15152
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-02989-CV-UWC-V

LAQUARIUS GRAY,
a minor, by and through her
mother and next friend,
Toniko L. Alexander,

Plaintiff-Appellee,

versus

ANTONIO BOSTIC,
individually and in his official
capacity as Deputy Sheriff for
Tuscaloosa County, AL,

Defendant-Appellant,

EDMUND SEXTON, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 12, 2009)

Before BLACK, CARNES and FAY, Circuit Judges.

CARNES, Circuit Judge:

This appeal marks the fourth time this case, which stems from a deputy's arrest of a nine-year-old child, has been before us since it began in 2003. The first time we reversed the district court's dismissal of Laquarius Gray's 42 U.S.C. § 1983 complaint on qualified immunity grounds. Gray v. Bostic, No. 04-12240, slip op. at 18, 22 (11th Cir. Dec. 27, 2004) (Gray I). The second time we affirmed the district court's denial of defendant Antonio Bostic's motion for summary judgment on qualified immunity grounds. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1307 (11th Cir. 2006) (Gray II). The third time we affirmed the district court's grant of judgment as a matter of law against Bostic because "he lacked even arguable probable cause to arrest Gray." Gray ex rel. Alexander v. Bostic, No. 07-10769, slip op. at 2 (11th Cir. Feb. 8, 2008) (Gray III). This time the issue is whether the district court abused its discretion under 42 U.S.C. § 1988 by awarding Gray attorney's fees even though the jury awarded her only $1.00 in nominal damages for Bostic's violation of her Fourth Amendment right to be free from illegal seizure.

**I.**

Because our earlier opinions set out the facts more fully we offer only a

2

distilled version here. After Gray was reprimanded by her gym teacher for failing to finish an assigned set of jumping jacks, she made a physical threat toward him. Gray II, 458 F.3d at 1300–01. Although a nearby female gym teacher stepped in to handle the situation, Antonio Bostic, who was then a Tuscaloosa County Sheriff's Deputy acting as the school resource officer, intervened. Id. at 1301. He took Gray into an adjacent lobby, where he pulled her arms behind her back and handcuffed her. Id. At the time of the incident the age of Laquarius was nine, and she was in the fourth grade. Gray I, No. 04-12240, at 2.

Following the district court's entry of judgment as a matter of law against Bostic, which we affirmed, Gray III, No. 07-10769, at 3, a jury awarded Gray $1.00 in damages. Gray then filed a motion for attorney's fees and expenses seeking $78,390. Bostic did not file a response to that motion.[1] The district court awarded Gray $70,532.93. Bostic appealed.

## II.

---

[1] Bostic did respond to Gray's earlier motions for attorney's fees, which she filed while Bostic's appeal from the district court's grant of judgment as a matter of law against him was pending before us. To avoid wasting judicial resources, the district court denied those earlier motions without prejudice but noted that Gray could refile her request for fees if we decided Bostic's appeal in her favor. We did, and she did. Bostic, however, did not refile his opposition.

We would typically decline to consider this issue because Bostic failed to make his arguments to the district court, but because he had already filed an opposition containing those arguments and the "proper resolution of this issue is now beyond any doubt," we "choose to exercise our discretion to consider" it. See Narey v. Dean, 32 F.3d 1521, 1527 (11th Cir. 1994).

"We review a district court's order awarding attorney fees for an abuse of discretion," which occurs if the court "fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). Under the abuse of discretion standard there is "usually a range of choices" available to the district court and "there is not only one right choice for the court to make. This is true even though we would have gone the other way had it been our call." Kenny A. ex rel. Winn v. Perdue, 532 F.3d 1209, 1218 (11th Cir. 2008) (alteration, citations, and internal quotation marks omitted). No matter what choice the court makes, though, it must "provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

### III.

Only a "prevailing party" is eligible for attorney's fees in civil rights cases, and a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12, 113 S. Ct. 566, 573 (1992). A "plaintiff who wins nominal damages is a prevailing party under § 1988." Id. at 112, 113 S. Ct. at 573. That a plaintiff

4

succeeds in only a limited way does not strip her of prevailing party status, but the degree of her success is "the most critical factor in determining the reasonableness of a fee award." Id. at 114, 113 S. Ct. at 574 (internal quotation marks omitted); see also Hensley, 461 U.S. at 436, 103 S. Ct. at 1941.

The small amount of money involved in a nominal damage award does not automatically indicate that a particular case is of little importance or that awarding attorney's fees would be an abuse of discretion. See Farrar, 506 U.S. at 121, 113 S. Ct. at 578 (O'Connor, J., concurring) ("Nominal relief does not necessarily a nominal victory make."). Other factors, including "the significance of the legal issue on which the plaintiff prevailed" and "the public purpose served," go into determining whether a plaintiff's victory is substantial enough, despite the minimal damage award, to justify shifting her attorney's fees to the defendant under § 1988. Id. at 121–22, 113 S. Ct. at 578–79; see also City of Riverside v. Rivera, 477 U.S. 561, 574–75, 106 S. Ct. 2686, 2894 (1986); Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996); Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1493 (11th Cir. 1994). As the Supreme Court has explained, "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. . . . [T]he public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and

above the value of a civil rights remedy to a particular plaintiff." Riverside, 477 U.S. at 574, 106 S. Ct. at 2694 (citations and internal quotation marks omitted).

Relying on the statement in Farrar that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all," 506 U.S. at 115, 113 S. Ct. at 575 (citation omitted), Bostic contends that Gray was not entitled to attorney's fees even though she was technically a prevailing party. He argues not only that the amount of money damages she recovered was de minimis but also that the legal issue on which Gray prevailed had "virtually no significance." He asserts that she "accomplished no public purpose or goal" with this extended litigation. Finally, Bostic argues that the fee award "is not proportional" to the $1.00 in nominal damages the jury awarded her.

In response, Gray contends that at most Farrar supports the proposition that a district court may exercise its discretion to conclude that no attorney's fee award is appropriate where the plaintiff has recovered only nominal damages; it does not stand for the proposition that a court is required to reach that conclusion. She asserts that the district court was within its discretion to award her attorney's fees and "devoted considerable judicial effort" to settling upon a reasonable fee. Gray argues that the district court used the proper method to calculate the lodestar

6

amount, then followed this Court's case law when it reduced the lodestar to offset the claims on which she did not prevail and when it enhanced the lodestar to account for the delayed payment of the fees. She maintains that the outcome of this case sends a "clear and unmistakable signal" that society will not tolerate an authority figure violating a child's constitutional rights, which makes this litigation's significance extend "far beyond the jury's award of nominal damages."

The district court, in deciding that the attorney's fee award it chose was warranted notwithstanding the nominal amount of damages, relied on the fact that the one published opinion to have come out of this litigation, Gray II, had been cited more than fifty times in the two years between its issuance and the district court's attorney's fee order. The court also stated that Gray's lawsuit, a contingency-fee, civil rights case, was "an undesirable one" among Northern District of Alabama lawyers because it required those lawyers to divert time and money away from more lucrative cases to accept one in which they had only a small chance of prevailing. The district court's reasoning was flawed.

For one thing, the court's reliance on the number of times the published decision generated by this litigation had been cited overstates the significance of the decision. Of the now eighty-eight citations to that decision, only three are for the point of law that it established. That point of law, which is hardly earth-

7

shattering, is that it is an unreasonable seizure in violation of the Fourth Amendment for a law enforcement officer, acting as a school resource officer, to "handcuff[] a compliant nine-year-old child for purely punitive purposes." Gray II, 458 F.3d at 1307; see also, e.g., Jordan v. Blackwell, No. 5:06-cv-214, 2008 WL 4449576, at *4 (M.D. Ga. Sept. 29, 2008) (noting that Gray II used Fourth Amendment analysis when evaluating the seizure and use of force on a student by a school resource officer). The other eighty-five citations to our Gray II decision are for general principles of law that were already well established, such as those dealing with our interlocutory jurisdiction over appeals from motions for summary judgment based on qualified immunity. See, e.g., Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008); Marshall v. West, 507 F. Supp. 2d 1285, 1293 (M.D. Ala. 2007) (citing Gray II for the principle that the first step of a qualified immunity analysis requires us to ask if the challenged act falls within or is reasonably related to the outer bounds of an officer's discretionary authority). It is clear that the district court's reliance on the number of citations to our Gray II decision, which was one of the central reasons supporting its fee award, was based on a misunderstanding about the significance of those citations.

Likewise, the district court should not have based its decision to award attorney's fees, despite the nominal nature of the damages, on its belief that this

case was "an undesirable one" among Northern District of Alabama lawyers, and that it required them to divert time and money away from more lucrative cases to handle one in which they had only a small chance of prevailing. There is nothing in the record to support the district court's belief that the case was an "undesirable one." Representing children is not an undesirable thing for attorneys to do. See Kenny A., 532 F.3d at 1234 (Carnes, J., concurring) (noting that representing children in foster care "brings professional accolades and enhances one's standing in the community"). Nor is there any support for the proposition that the plaintiff had only a small chance of prevailing; she did, in fact, obtain a judgment in her favor. Finally, there is nothing in the record to support the district court's speculation that but for their handling of this case, plaintiff's attorneys would have been able to pursue more lucrative cases. The silent premise of the district court's reasoning is that attorneys have all the business they can handle and every case they take requires them to turn down another case that would have brought them fees. We do not know that to be true, and neither did the district court. There is nothing in the record indicating that by representing Gray these attorneys passed up a chance to handle lucrative cases.

Plaintiffs in nominal-damage cases should not be awarded attorney's fees in any but exceptional circumstances. See Farrar, 506 U.S. at 115, 113 S. Ct. at 575;

9

id. at 121–22, 113 S. Ct. at 578–79 (O'Connor, J., concurring); Riverside, 477 U.S. at 574–75, 106 S. Ct. at 2694; Duckworth, 97 F.3d at 1399. We do not decide whether this is an exceptional circumstances nominal damages case justifying the award of fees. Instead, we decide only that the reasoning the district court used to find that it was cannot support that finding. On remand, the court should reconsider the issue of attorney's fees free of the errors that we have pointed out.

## IV.

In case the district court does decide on remand that attorney's fees are justified in this case, we point out some errors it made in calculating the amount of them. First, it appears from our review of the record that the court included in its lodestar calculation hours spent by Gray's counsel during the earlier appeals to this Court. In general a "district court is not authorized, by local rule or otherwise, to control the . . . assessment of attorney's fees for services rendered on appeal. If a party wishes to obtain fees on appeal, he or she must file a [timely] petition with the clerk of this circuit. . . ."[2] Mills by Mills v. Freeman, 118 F.3d 727, 734 (11th Cir. 1997) (internal quotation marks omitted).

---

[2] At the time Mills was decided, a petition was considered timely if it was filed "within fourteen days of the issuance of the opinion of this court." See 118 F.3d at 734. That language has since been superseded by Eleventh Circuit Rule 39-2(a), which provides that "an application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later." 11th Cir. R. 39-2(a).

Eleventh Circuit Rule 39-2(e), however, does permit parties to request attorney's fees for appellate work from the district court under certain circumstances.  See 11th Cir. R. 39-2(e).  Rule 39-2(e) provides:

> When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

Id.  Because we reversed the district court's dismissal of Gray's complaint the first time this case was before us, see Gray I, No. 04-12240, at 22, Rule 39-2(e) gave the district court discretion to include appellate hours spent on that appeal in its fee calculation.

Gray eventually prevailed on the merits when the final judgment awarding $1.00 in damages was entered in her favor.  She filed an application for attorney's fees with the district court within the time allotted by that court.  Thus, to the extent Gray's application requested fees for hours expended on this case's first trip to us, the district court did not abuse its discretion by including that time within the "reasonable hours" variable of the lodestar formula.  The second and third appeals in this case did not involve reversals and remands for further proceedings, however, so the district court should not have awarded fees for any work

11

attributable to those appeals. See 11th Cir. R. 39-2(e).

Second, even though the district court used current hourly rates to calculate the lodestar amount, it also enhanced that amount by fifteen percent to account for the "delay between the time the services were rendered and the payment for the services." The court decided to use both current rates and an enhancement to compensate for the delayed payment because of its general feeling that current rates did "not reflect inflation." We have recognized that "where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). That does not mean a court should do more to adjust for the time value of money than award compensation at current rates. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 282, 109 S. Ct. 2463, 2468 (1989) ("In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (internal quotation marks omitted) (emphasis added)); Kenny A., 532 F.3d at 1227 ("Finally, we have said that any delay in payment for professional services rendered is offset by the fact that the hourly rates used are those that prevail at the completion of the case instead of the usually lower rates

12

that were in effect at the time the earlier work was done."); Gaines v. Dougherty County Bd. of Educ., 775 F.2d 1565, 1572 n.14 (11th Cir. 1985) ("[U]sing current rates to account for the delay in payment is somewhat inaccurate as it assumes that the increase in legal fees mirrors that of inflation, which in many instances is not the case. A more accurate method for adjusting for delays in payment would be to apply to the award a figure which is recognized as representing the time value of money over the period of the litigation.").

We need not decide if it is permissible for a district court to make time-value-of-money adjustments in calculating attorney's fees by any method other than paying for all countable hours at current hourly rates. Even if it is permissible to make the time-value-of-money adjustment through an enhancement in the lodestar amount, we seriously doubt that both methods of accounting for the time value of money can be combined. And we are sure that they cannot be combined without specific evidence in the record and particularized findings that the use of current hourly rates is not enough to reasonably approximate the effects of the delay in payment for past hours worked. There is no such evidence or finding in this record. A general statement, apparently based on nothing more than the district court's impression, that the increase in hourly rates over the life of the lawsuit has not kept up with inflation is insufficient to enhance a lodestar that is

13

based on current hourly rates. See Norman, 836 F.2d at 1302.

We are not implying that district courts should hear evidence and make the findings necessary to permit a comparison of the time value of money with changes in the hourly rate over the life of the lawsuit and then adjust the lodestar amount accordingly. Undertaking that sort of intensive and extensive inquiry might threaten to violate the spirit, if not the letter, of the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437, 103 S. Ct. at 1941; cf. Barnes, 168 F.3d at 432 ("Putting an end to attorney fees issues as soon as possible is, to borrow a phrase from Holmes, a 'concession to the shortness of life.'" (quoting Reeve v. Dennett, 11 N.E. 938, 944 (Mass. 1887))). It is far simpler, and under our precedent permissible, to account for the delay in payment by using current hourly rates to calculate the lodestar and leaving it at that. All we need say here is that if it is ever permissible to take a lodestar amount that was calculated using current hourly rates and enhance it because of delay in payment, that cannot be done without supporting evidence and detailed findings, neither of which exist in this case.

The district court's order granting attorney's fees is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.