[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11932
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:05-cv-02463-JTC

CAITLIN CHILDS,
CHRISTOPHER FREEMAN,

Plaintiffs-Appellees,

versus

DEKALB COUNTY, GEORGIA, et al.,

Defendants,

DETECTIVE D.A. GORMAN,

Defendant-Appellant.

_____

No. 10-14041
Non-Argument Calendar
_____

D.C. Docket No. 1:05-cv-02463-JTC

CAITLIN CHILDS,
CHRISTOPHER FREEMAN,

Plaintiffs-Appellants,

versus

DEKALB COUNTY, GEORGIA, et al.,

Defendants,

DETECTIVE D.A. GORMAN, individually,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(March 1, 2011)

Before WILSON, COX, and BLACK, Circuit Judges.

PER CURIAM:

## I.  CASE NO. 10-14041

In this case, which has been consolidated with our case number 10-11932, Plaintiffs Childs and Freeman appeal the district court's order denying their request to award them attorneys fees and costs against the defendant David Gorman. Plaintiffs seek some $200,000 in fees and $4,239 in costs based on a verdict for each Plaintiff of $1.00 in compensatory damages and $1.00 in punitive damages, for a total award of $4.00.  The district court denied the request for fees and costs in a brief order.

The facts are straightforward. Detective Gorman was ordered to observe and photograph a protest that was attended by Plaintiffs in December 2003. Gorman photographed the protest while in plain clothes and seated in his unmarked police car parked across the street. Plaintiff Childs noticed Gorman taking photos of the protesters and wrote down the tag number of Gorman's vehicle, presumably to report Gorman's suspicious activity. Plaintiffs then departed in their vehicle. Concerned that Plaintiffs would make public his tag number and endanger his family because he drove his unmarked car home after work, Gorman decided to follow Plaintiffs to the nearby restaurant where they had stopped. Gorman testified that he hoped that if he explained to Plaintiffs why he was concerned, they would hand over the paper with the tag number on it. Gorman approached Plaintiffs with the assistance of Officer Maphet; Plaintiffs were uncooperative and belligerent. Eventually, the situation degenerated, and Plaintiffs were arrested for disorderly conduct and taken into custody.

The Plaintiffs contend that this was an exceptional case justifying an award of fees and costs. We agree that this case was "exceptional," but not in the sense the Plaintiffs say that it was. It was "exceptional" because the jury obviously concluded that it was either much ado about nothing or, at best, much ado about very little.

Apparently the only claim on which the Plaintiffs prevailed against Detective Gorman was a claim that Gorman wrongfully detained the Plaintiffs for a period of time prior to Gorman's lawful arrest of the Plaintiffs. The jury obviously concluded the Plaintiffs sustained no significant injury during the detention.

The Plaintiffs present two issues on this appeal: first, they argue that the district court abused its discretion by failing to apply the three factors for analyzing fees in nominal damages cases, and that, had these factors been applied, fees would have been awarded; and second, they argue that the court abused its discretion by denying Plaintiffs' costs without explanation.

We reject the suggestion that the district judge did not use the three-factor test the Supreme Court and this Court employ when determining prevailing-party fees in nominal damages cases. And, we reject the argument that the district judge erroneously concluded that denial of fees was mandatory. While it would have been preferable had the district judge listed the factors to be considered, and addressed each in turn, it is clear that the district court applied the correct law. The court's order denying fees and costs cited *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992), and *Gray v. Bostic*, 570 F.3d 1321, 1326 (11th Cir. 2009), which inform the award of fees in nominal damage cases. And, the court's parenthetical case descriptions clearly show that the court understood that fees could be awarded,

4

but should not be awarded in nominal damages cases except in an exceptional case. None of the three factors set out in *Farrar* favor an award of fees in this case.

We likewise reject Plaintiffs' argument that a district court abuses its discretion in a nominal damages case by failing to provide an explanation for its denial of fees. None of the cases cited by Plaintiffs for this proposition were nominal damages cases. All of the cases involved an appeal of an award attorneys fees and costs. In such situations, district judges are required to "provide a concise but clear explanation of its reasons for the fee award" so that appellate courts may be able to decipher the calculus used by the district court in granting attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983). This rule makes sense because when fees are awarded it is necessary for an appellate court to gauge the reasonableness of the award. In nominal damages cases, however, the default rule is to deny attorneys fees in all but exceptional cases. Plaintiffs have cited no authority requiring a district court to provide a detailed explanation of its reasons for finding a case "unexceptional" in a nominal damages case. We find no abuse of discretion in the denial of fee in this case.

The district court should have stated a reason for its denial of an award of court costs. But, given the circumstances in this case, we decline to find error in the court's discretionary denial of costs.

5

## II. CASE NO. 10-11932

In this case, the defendant David Gorman appeals following a verdict and judgment against him for each Plaintiff in the amount of $1.00 in compensatory damages and $1.00 in punitive damages.

Gorman presents two issues on this appeal. He contends that the district court erred in denying his pre-verdict and post-verdict Rule 50 motions to set aside the jury verdict against him because he is entitled to qualified immunity.[1] In the alternative, Gorman contends that the district court erred in denying his motion to set aside the punitive damages award against him because the Plaintiffs did not introduce evidence at trial that would support such an award.

We reject Gorman's argument that the district court erred in denying his Rule 50 motion to set aside the jury verdict. "After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense." *Ortiz v. Jordan*, ___ U.S. ___, 131 S. Ct. 884, 889 (2011) (citing Fed. R. Civ. P. 50). And, as we have previously noted, "[w]here there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting

---

[1]The district court incorrectly construed Gorman's motion as a Rule 59(e) Motion to Alter or Amend a Judgment. (Dkt. 149, Order at 2.)

the qualified immunity defense will usually get that plaintiff past a Rule 50[] motion asserting the defense . . . ." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).

Gorman contends that even if his actions amounted to an unlawful seizure under the Fourth Amendment, such violation was not clearly established at the time of his interactions with Plaintiffs. In support of this position, Gorman argues that not all of Plaintiffs' allegations relied upon by this court in a prior panel opinion affirming the denial of qualified immunity to Gorman were proven at trial. Gorman says that the evidence at trial showed that he did not threaten to arrest Plaintiffs if they failed to produce identification. He also argues that the evidence showed that when he grabbed Freeman's wrist, it was to effectuate a lawful arrest for disorderly conduct. Even in the absence of these two pieces of evidence, we conclude that there was sufficient evidence introduced at trial from which a reasonable jury could conclude that Gorman's stop of Plaintiffs was a seizure under the Fourth Amendment. There was evidence that Plaintiffs' vehicle was blocked, Officer Maphet's blue lights were activated, and the Plaintiffs were ordered out of their vehicle and repeatedly questioned for nearly an hour. Detective Gorman admitted at trial that he did not have reasonable suspicion to stop Plaintiffs or to detain and question them. In light of this evidence, we conclude that the district court was correct in denying qualified

immunity to Gorman because it was clearly established that a seizure without reasonable suspicion violates Fourth Amendment rights.[2] *See, e.g., United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006); *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983).

We also reject Gorman's argument that the district court erred in denying his motion to set aside the award of punitive damages. It is well-settled that intentional violations of federal law are "sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Smith v. Wade*, 461 U.S. 50, 51, 103 S. Ct. 1625, 1637 (1983). There is evidence in this case that Gorman knew that he lacked reasonable suspicion to stop Plaintiffs. Gorman also testified that he had been trained that it was unlawful for him to seize a person absent probable cause, but that he chose to stop them anyway. (Dkt. 171, Tr. Transcript at 35.) Such evidence is sufficient to send to the jury the question of punitive damages. *Wade*, 461 U.S. at 51, 103 S. Ct.

---

[2]We have stated that "a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense." *Johnson*, 280 F.3d at 1318. In order for a jury to make such factual determinations, however, special interrogatories must be used. *Id.* When requested, "the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Id.* (citing *Cottrell v. Caldwell*, 85 F.3d 1480, 1487 (11th Cir. 1996) ("Because a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted.")). In this case, Gorman requested no special interrogatories and none were given.

at 1637.  Gorman argues that the fact that the jury concluded that he had unconstitutionally detained Plaintiffs does not mean that the jury concluded that Gorman "intended" to unconstitutionally detain Plaintiffs.  In light of the court's instructions to the jury, however, we conclude that the jury found that Gorman intentionally violated federal law when stopping Plaintiffs.  The court instructed the jury that in order to find Gorman liable to Plaintiffs they had to find "that the Defendants intentionally committed acts that violated the Plaintiffs' federal constitutional right not to be arrested or seized without probable cause . . . ."  (Dkt. 173, Tr. Transcript at 8.)  The law assumes that jurors follow the instructions given them.  *United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997).  Because we conclude there was sufficient evidence from which the jury could conclude that Gorman intentionally violated Plaintiffs' constitutional rights, it was not error for the district court to deny Gorman's motion with respect to the award of punitive damages.

## III.  CONCLUSION

In case number 10-14041, the district court's order denying Plaintiffs' attorney fees and costs is AFFIRMED.  In case number 10-11932, the district court's order denying Defendant Gorman's motion for judgment as a matter of law based on qualified immunity and the court's order denying Gorman's request to overturn the jury's award of punitive damages is AFFIRMED.

AFFIRMED.