[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16522
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cr-00138-JA-TBS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK PADRON FUENTES,
TAMARA VIGOA DIAZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 28, 2013)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Frank Padron Fuentes appeals his convictions for access device fraud, in

violation of 18 U.S.C. §§ 1029(a)(4) and 2 (Count 4), and conspiracy to commit

access device fraud, in violation of 18 U.S.C. § 1029 (b)(2) (Count 1).  Fuentes raises two issues on appeal.  First, Fuentes argues that the jury instructions as to Count 1 were confusing and deprived him of due process of law.  Second, Fuentes argues that the jury instructions as to Count 4 constructively amended the indictment.  Although he did not object to either of these issues at trial, Fuentes argues that both of these defects in the jury instructions constitute plain error.

Fuentes's wife, Tamara Vigoa Diaz, appeals her conviction for access device fraud, in violation of 18 U.S.C. §§ 1029(a)(4) and 2.  Diaz's sole argument on appeal is that the district court abused its discretion by denying her motion for a mistrial after the government referred to improper evidence during its rebuttal argument.

## I.

## A.

On June 6, 2012, a federal grand jury sitting in the Middle District of Florida returned an indictment against Frank Padron Fuentes, Tamara Vigoa Diaz, and Fuentes' brother (also named Frank Padron Fuentes).  Fuentes was charged with two counts of access device fraud (Counts 3 and 4) and one count of conspiracy to commit access device fraud (Count 1).  Diaz was charged with one count of access device fraud (Count 4).  Fuentes and Diaz proceeded to trial on all of their charges on September 17, 2012.

The evidence presented at trial showed that the United States Secret Service began to investigate Fuentes and his brother in April 2009, when Francisco Ocampo—the head of a credit card fraud ring in Los Angeles, CA—traveled to Orlando, FL to meet with them.

During their investigation, Secret Service agents intercepted packages sent to the home of Fuentes's brother containing credit card skimming devices and 20 counterfeit credit cards. Agents also conducted a consensual search of Fuentes and Diaz's apartment, where they recovered three boxes addressed to Diaz containing two card printers, an embosser, and a printer ribbon containing groups of credit-card numbers. Secret Service agents also found a packet of blank credit card stock and a list of 105 credit card numbers. The agents later determined that most of these 105 accounts had been defrauded, with a total loss of more than $40,000.

B.

The government also presented evidence recovered during a search of Fuentes's Ford F-350 pickup truck. During that search, agents discovered a false compartment containing a large fuel tank, two fuel pumps, digital fuel meters, and a receipt for $170 worth of diesel fuel that had been purchased with a credit card belonging to a company in California that did not conduct any business in Florida. Agents testified at trial that credit card fraudsters sometimes use their counterfeit

3

credit cards to purchase large quantities of fuel.  Fraudsters can then resell the fuel

for cash to launder the proceeds of their fraud.

Diaz objected to the evidence of the fuel tank and fraudulent fuel purchase

both before trial and again before it was presented to the jury.  She argued that the

evidence of the fuel tank and the fraudulent fuel purchases had nothing to do with

her charges.  Therefore, she requested that the district court exclude the evidence

completely, grant a severance, or provide a strong admonishment to the jury that

the evidence could not be considered in determining Diaz's guilt.  The district

court refused to exclude the evidence or grant a severance, although it agreed to

give the following instruction:

> Ladies and gentlemen, you're instructed that the evidence and testimony relating to the hidden gas tank and alleged fraudulent fuel purchases are not to be considered by you as evidence pertaining to the charges against Miss Vigoa Diaz in count four of the indictment. Tamara Vigoa Diaz is on trial only for the charge in count four of the indictment.

During closing argument, Diaz argued that the government had failed to

prove that she had the requisite knowledge or intent to possess any of the device-

making equipment discovered during the search.  The government argued in

rebuttal:

> There is no way to escape the fact that in her tiny little apartment that she wasn't aware about the three big machines that are sitting here today; that she wasn't aware, when they had all been delivered to her, when she admitted . . . that she had signed for them and brought them in the apartment . . . There's a list of credit card numbers, access

devices, blank credit card stock all on her dining room table.  You don't notice that all around your bills and correspondence?  <u>The entire bed of their truck—and there's only evidence of one vehicle, folks, one.  And it's there the day they do the consent search.  She has it.</u>

. . .

That vehicle is there at their apartment when she's there.  And she doesn't know?  It defies common sense to think otherwise.

After the end of the prosecutor's rebuttal, Diaz moved for a mistrial outside of the jury's presence.  The district court agreed to sustain Diaz's objection in front of the jury and to instruct the jury again that the evidence regarding the hidden gas tank and alleged fraudulent fuel purchases were not to be considered as evidence against Diaz.  The district court, however, denied Diaz's motion for a mistrial, stating that "I just think it's a close enough call; and I think with the instruction, the jury will be guided to do the right thing.  I've already told them to disregard it."

## C.

After closing arguments, the district court read the jury instructions.  With respect to Count One, the conspiracy charge, the district court stated:

> Defendant Frank Padron Fuentes [] can be found guilty of this conspiracy offense only if all the following facts are proved beyond a reasonable doubt: (1) That two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to knowingly and with intent to defraud use or traffic in unauthorized access devices, as charged in the Indictment . . .

With respect to Count Four, the access device fraud charge, the district court instructed the jury that:

5

In Count Four of the indictment, both of the Defendants are charged with violating Section 1029(a)(4) of Title 18 of the United States Code, which makes it a federal crime to knowingly and with intent to defraud, have custody or control of, or possess, device-making equipment.

A Defendant can be found guilty of this crime only if all of the following acts are proved beyond a reasonable doubt: (1) That the Defendant knowingly had custody or control of, or possessed, device-making equipment . . .

Thus the instruction referenced device-making equipment in general, while the indictment specifically charged that Fuentes and Diaz possessed "a credit card embossing machine and blank credit card stock."

The jury found Fuentes and Diaz guilty of all charges. At sentencing, Fuentes was sentenced to 22 months imprisonment followed by 2 years of supervised release. Diaz was sentenced to 5 years of probation.

## II.

Diaz's sole argument on appeal is that the district court erred when it refused to declare a mistrial after the government referred to improper evidence during its rebuttal argument. We review for abuse of discretion the denial of a motion for a mistrial. United States v. Chavez, 584 F.3d 1354, 1362 (11th Cir. 2009). In the context of allegedly improper prosecutorial statements, we will reverse a defendant's conviction "only where the prosecutor's remarks (1) were improper and (2) prejudiced the defendant's substantial rights" in the context of the entire trial and in light of any limiting instruction. United States v. O'Keefe, 461 F.3d

6

1338, 1350 (11th Cir. 2006) (quotation marks omitted).  A defendant's substantial rights are prejudicially affected when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different.  United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).

Even assuming that the government's comments to the jury were improper, we find that the remarks did not prejudice Diaz's substantial rights.  Throughout the trial and immediately following the government's remarks, the district court instructed the jury that it was not to consider any evidence of the fuel tank or fraudulent fuel purchases for purposes of Diaz's charges.  See United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) ("A curative instruction . . . may render a prejudicial remark by the prosecutor harmless.").  After giving these instructions, it was within the district court's discretion to conclude that the jury would follow its instructions and disregard the government's statements.

Diaz argues that this case is analogous to United States v. Blakely, where we held that the district court should have granted a mistrial after the prosecutor called the defendant a "professional criminal," despite the presence of curative instructions by the district court.  14 F.3d 1557, 1560 (11th Cir. 1994).  In Blakely, however, we addressed the issue of improper and false statements about a defendant's criminal record and recognized that evidence of a defendant's criminal history is "especially likely to stick in the minds of the jury and influence its

7

deliberations." Id. at 1561 (quoting Hall v. United States, 419 F.2d 582, 587 (5th Cir. 1969)). The suggestion that Diaz knew about the concealed fuel tank in Fuentes' truck does not rise to the level of evidence we found harmful in Blakely. On the record before us here, we cannot conclude that the district court abused its discretion in deciding not to grant a mistrial. See Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1039 (11th Cir. 2010) ("The abuse of discretion standard usually implies a range of choices, instead of only one right choice, and often we will affirm even though we would have decided the other way if it had been our choice.").

### III.

For the first time on appeal, Fuentes argues that his jury instructions were defective. Where a defendant did not object to his jury instructions at trial, we review for plain error. United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995). In the same way, when a defendant fails to object that the jury instructions constructively amended the indictment, we also review for plain error. United States v. Madden, No. 11-14302, ___ F.3d ___, ___, 2013 WL 4400388, at *6 (11th Cir. Aug. 16, 2013). We may reverse a conviction under plain-error review if we find that four prongs are met: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are satisfied, we may exercise discretion to correct the error if (4) the error

8

seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993).

The government argues that Fuentes has waived any challenges to the jury instructions and is not even entitled to plain error review. In light of Fuentes's failure to object when the district court asked if the parties were "satisfied with the reading of the instructions," the government argues that Fuentes invited the errors that he is challenging. We reject this argument. "[F]ailing to object does not trigger the doctrine of invited error." United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir. 2012). Rather, the doctrine of invited error applies when a defendant affirmatively requests or stipulates to a particular jury instruction. See United States v. Frank, 599 F.3d 1221, 1240 (11th Cir. 2010) ("[Defendant] invited error when he not only agreed with the supplemental instructions and special verdict form, but requested them."); United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir. 2005) (holding that defendant invited omissions in jury instructions by opposing government's proposed elaboration of the instructions). Because Fuentes merely failed to object, the doctrine of invited error does not apply and we review for plain error.

A.

9

Fuentes first argues that the jury instructions as to Count 1 were confusing to the point of depriving him of his right to due process of law.  The district court instructed the jury that in order to find a conspiracy, the evidence must prove:

> [T]hat two or more persons, in some way or manner agreed to try to accomplish a common and unlawful plan to knowingly and with intent to defraud, use, or traffic in unauthorized access devices as charged in the Indictment . . .

Fuentes suggests that the district court should have clarified that the phrase "use or traffic in unauthorized access devices" was a separate consideration from the "intent to defraud" element.  Fuentes argues that as a result of this ambiguity, the jury could have convicted him of Count One without finding that he acted with "intent to defraud," as long as the jury found "intent to use" or "intent to traffic."

"The district court has broad discretion in formulating a jury charge so long as the charge as a whole accurately reflects the law and the facts."  United States v. Richardson, 233 F.3d 1285, 1292 (11th Cir. 2000).  "When the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism."  United States v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996).  As a result, we will not reverse a conviction unless the issues of law were presented inaccurately or the charge improperly guided the jury in such a substantial way as to violate due process.  United States v. Perez-Tosta, 36 F.3d 1552, 1564 (11th Cir. 1994).

10

In addition, when reviewing a jury instruction under the plain error standard, we will reverse "only in exceptional cases where the error is so fundamental as to result in a miscarriage of justice." Iervolino v. Delta Air Lines, Inc., 796 F.2d 1408, 1414 (11th Cir. 1986) (quotation marks omitted). For a jury instruction to constitute plain error it must be "probably responsible for an incorrect verdict, leading to substantial injustice." United States v. Prather, 205 F.3d 1265, 1271 (11th Cir. 2000) (quotation marks omitted). For example, if the instruction misled the jury or left the jury to speculate as to an essential point of law, the error may be "sufficiently fundamental" to warrant a new trial despite a party's failure to state a proper objection. Id.

Under the facts of this case, we cannot say that the conspiracy instruction was "probably responsible for an incorrect verdict, leading to substantial injustice." Id. During the trial, the government provided overwhelming circumstantial evidence showing that Fuentes acted with the intent to defraud and in fact defrauded others, amassing over $40,000 in fraudulent credit card charges. The jury also found Fuentes guilty of access device fraud in Counts 3 and 4, each of which clearly and unambiguously required the jury to find that Fuentes acted with intent to defraud. As a result, we cannot conclude that the district court's jury instructions for Count 1 affected Fuentes's substantial rights.

B.

11

Fuentes also argues that the jury instructions were defective because they constructively amended the indictment.  Count 4 of the indictment states that Fuentes "had control and custody over and possessed device-making equipment, to wit, a credit card embossing machine and blank credit card stock."  In the jury instructions, however, the district court did not specifically refer to Fuentes's possession of an embossing machine and blank credit card stock.  Instead, the instructions only generally referred to "device-making equipment."

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. CONST. Amend. V.   The Supreme Court has stated in interpreting the Fifth Amendment that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."  Stirone v. United States, 361 U.S. 212, 217, 80 S. Ct. 270, 273 (1960).  These principles prohibit the constructive amendment of an indictment by way of a district court's instructions to a jury.  Id. at 215–217, 80 S. Ct. at 272–73.  A constructive amendment to an indictment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment."  United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990).  In order for a constructive amendment to constitute

12

plain error, however, the amendment must have affected the outcome of the district court proceedings.  See Madden, 2013 WL 4400388, at *6.

In this case, we do not need to decide whether the district court erred—plainly or otherwise—by improperly amending the indictment because we have concluded that the district court's instructions did not affect the outcome of the proceedings.  Given that all of the evidence of device-making equipment in this case was discovered in Fuentes and Diaz's home, we see no possibility that the jury would have returned a different verdict if the instructions had specified that Fuentes must have possessed an "embossing machine and blank credit card stock" rather than device-making equipment generally.  Indeed, Fuentes never disputed the fact that there was an embossing machine and blank credit card stock in his apartment.  His primary argument at trial was that the government failed to link him to the fraudulent scheme.  That being the case, we can conclude with certainty that Fuentes was not prejudiced by the district court's potential amendment of the indictment.

## IV.

Based on the above, we affirm Fuentes and Diaz's convictions.

**AFFIRMED.**

13